Wanda PALMER, Plaintiff–Appellant,

v.

FAYARD MOVING AND TRANSPORTATION CORP., Defendant–Appellee.

No. 90–1918
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 2, 1991.

**438**

Judy M. Guice, Paul S. Minor, Minor & Guice, Biloxi, Miss., for plaintiff-appellant.

J. Stephen McDonald, Thomas L. Stennis, II, Stennis & McDonald, Gulfport, Miss., for defendant-appellee.

Before WISDOM, KING and GARWOOD, Circuit Judges.

WISDOM, Circuit Judge:

This case raises the issue whether Wanda Palmer has a cause of action under 46 U.S.C.App. § 688 of the Jones Act or general maritime law. Because we agree with the district court that Palmer has no cause of action under the Jones Act, we affirm the district court's grant of summary judgment to Fayard Moving and Transportation Corporation ("Fayard") on this point. Because we hold that Palmer has a cause of action for negligence under general maritime law, we reverse the district court's holding that maritime jurisdiction does not attach and we remand. We affirm, however, the district court's dismissal of Palmer's unseaworthiness claim under general maritime law.

## I.

Wanda Palmer, a resident of Mississippi, was employed by Fayard from September 1986 to December 1986 as a public relations agent. This case arises out of an incident that occurred on October 4, 1986 when Palmer, while descending a ladder on board the M/V FRANCES FAYARD, slipped and fell. Palmer's complaint alleged that she was performing duties as a seaman or was an invitee aboard the vessel and that she was injured because of the unseaworthy condition of the vessel and the negligence of her owners, operators and employees.

The district court, finding that Palmer was not a Jones Act seaman and that general maritime law did not apply to the action, granted Fayard's Motion for Summary Judgment.

## II.

We review a district court's grant of summary judgment *de novo*, resolving any disputed issues in favor of the non-movant, to determine whether the record, as it exists, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir.1987).

### A. *Jones Act claim*

Thirty-two years ago this Court enumerated the criteria for determining seaman status under the Jones Act. In *Offshore Company v. Robison*, 266 F.2d 769, 779 (5th Cir.1959) we held:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the

accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

The doctrine has stood the test of the time. The Supreme Court recently endorsed it in *McDermott Int'l., Inc. v. Wilander,* — U.S. ——, ——, 111 S.Ct. 807, 816, 112 L.Ed.2d 866 (1991).

Palmer does not meet the first part of the *Robison* test in that she was not assigned permanently to the M/V FRANCES FAYARD, nor did she perform a substantial amount of her work on the vessel.

Palmer's own deposition shows that she was primarily employed as a land-based public relations officer for Fayard. Palmer said that her employment consisted of writing letters, acting as a liaison with clients, researching the history of the M/V FRANCES FAYARD, and setting up trips on the vessel for people who did business with Fayard. Palmer also testified that her duties in organizing the boat trips consisted of ordering the food, beverages, ice and other supplies, and preparing the boat for the trips. In addition, Palmer and her husband cleaned the vessel during the week before and after the social events.

Palmer testified that she completed ten trips aboard the M/V FRANCES FAYARD during the course of her employment, six of these after her accident on October 4, 1986. The district court, using Palmer's estimate that each trip averaged 10.32 hours[1], found that, at a maximum, the 103.2 hours that Palmer said she spent working aboard the vessel represented only about 19% of the 549 hours indicated by her time card records; the remaining hours were spent on land. Obviously, Palmer was not permanently assigned to the M/V FRANCES FAYARD.

Furthermore, the district court found that the time spent on the vessel did not represent a "substantial part" of Palmer's work, and in this respect too, she did not satisfy the *Robison* test. We agree. In addressing the question what constitutes performing a "substantial part" of one's work on a vessel, this Court has stated that "if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform) his status as a crew member is determined 'in the context of his entire employment' with his current employer." *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1075 (5th Cir.1986) (quoting *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1347 (5th Cir. 1980)).

In *Barrett,* we found that a welder's helper who performed no more than twenty to thirty percent of his work on vessels was not a seaman because he did not perform a substantial portion of his work aboard a vessel. In *Ward v. Reeled Tubing, Inc.,* 637 F.Supp. 33, 37–38 (E.D.La.1986), the Court held that the plaintiff, who performed 20% of his work on vessels, was not a seaman, because the amount of time spent on vessels was "significantly less than the 20 to 30% ruled insufficient as a matter of law in *Barrett*". In keeping with this precedent, we find that even if we accept Palmer's assertion that she spent 19% of her time on vessel-related work, this is insufficient, as a matter of law, to convince us that she was either permanently assigned to the vessel or performed a substantial part of her work on board a vessel. Accordingly, we hold that Palmer was not a seaman under the Jones Act. The district court did not err in granting Fayard's Motion for Summary Judgment on this claim.

### B. *Admiralty Jurisdiction*

It is now well established that two requirements must be met to invoke federal admiralty jurisdiction. First, a locality test must be met: the damage or injury must take place on navigable waters. Second, the wrong must have a "significant relationship to traditional maritime activity." *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34

---

**1.** There was also testimony in the record that some of the trips were half-day trips, lasting only three hours, while full day trips lasted six hours. Thus, it is plain that the district court viewed the evidence in the light most favorable to Palmer.

L.Ed.2d 454 (1972). *See also Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 673, 102 S.Ct. 2654, 2657, 73 L.Ed.2d 300 (1982); *Miller v. Griffin–Alexander Drilling Co.*, 873 F.2d 809, 810 (5th Cir. 1989).

■ Both parties agree that the locality test is met in this case; Palmer's accident occurred on board the vessel M/V FRANCES FAYARD. The question we must address is whether the wrong alleged by Palmer bears a significant relationship to maritime activity.

This Court has developed several factors to aid in determining whether a wrong bears a significant relationship to maritime activity. The factors we consider are set forth in *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973) as follows:

1) the functions and roles of the parties;

2) the types of vehicles and instrumentalities involved;

3) the causation and the type of injury; and

4) traditional concepts of the role of admiralty law.

This Court recently restated these factors in *Molett v. Penrod Drilling Co.*, 826 F.2d 1419, 1426 (5th Cir.1987), observing:

The Court's decisions in *Executive Jet* and *Foremost* suggest that indicia of maritime flavor can be found in (1) the impact of the event on maritime shipping and commerce (2) the desirability of a uniform national rule to apply to such matters and (3) the need for admiralty "expertise" in the trial and decision of the case.

We have said that we discern little difference between the two tests: the first *Molett* factor requires consideration of the first two *Kelly* factors, the second *Molett* factor is no different from the fourth *Kelly* factor, and the third *Molett* factor requires a court to consider the type of injury and its cause, which is the third *Kelly* factor.

See *Miller v. Griffin–Alexander Drilling Co.*, 873 F.2d at 814.

The district court did not detail its application of these factors to Palmer's case. We do so now.

1. *The functions and roles of the parties.*

■ The defendant/appellee is a vessel owner, traditionally a maritime role. Palmer was a land-based employee of the defendant, performing some duties aboard the vessel. In considering Palmer's functions and role, "the question properly asked is whether the actual tasks the workers perform bear any inherent relationship to maritime activity, that is, whether the Plaintiffs' jobs are identical to those undertaken by land-based workers and are connected to maritime affairs merely because performed aboard ship, or whether they are tasks somehow unique to maritime service or work traditionally done by seamen." *Woessner v. Johns–Manville Sales Corp.*, 757 F.2d 634, 644 (5th Cir.1985) (quoting *Harville v. Johns–Manville Products Corp.*, 731 F.2d 775, 784–85 (11th Cir. 1984)). Employing this analysis, we find that Palmer's duties on board the vessel, as described, were not connected to traditional maritime activity.[2]

■ Palmer further argues that, if she was not engaged in a maritime role, she was at least a passenger aboard the vessel, a role long protected by admiralty jurisdiction. *See, e.g., Benedict on Admiralty* (7th ed.) § 171, 11–19 (1989). "The traditional basis for a passenger-carrier relationship has been the existence of a contract of carriage between a paying traveler and a person-transporting shipowner, or their respective agents." *Rutledge v. A & P Boat Rentals, Inc.*, 633 F.Supp. 654, 656 (W.D.La.1986). We doubt that Palmer can be considered a passenger on the M/V FRANCES FAYARD.[3] In any event, we find that Palmer was on board the vessel in a role other than a seaman. Because only those doing seaman's work are covered by

---

2. We do not accept Palmer's assertions that she should be considered a *Sieracki* seaman, as defined by the progeny of *Seas Shipping v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

3. There seems to be some discrepancy over Palmer's role on board the vessel; her employer testified that she should not have clocked in for the boat trips.

the warranty of seaworthiness, this claim was properly dismissed. This factor, however, is not decisive as to whether the court should exercise maritime jurisdiction over Palmer's negligence claim.

2. *The types of vehicles and instrumentalities involved.*

The vehicle involved in this case is a vessel; the instrumentality is the vessel's fixed ladder. "A vessel floating in navigable waters and the rungs of its ladder are maritime in nature." *Taylor v. Kennedy Engine, Inc.,* 861 F.2d 127, 129 (5th Cir. 1988). This factor weighs in favor of maritime jurisdiction.

3. *The causation and type of injury.*

Injuries caused by slip and fall accidents on board a vessel have consistently been found to constitute maritime torts. *See Taylor v. Kennedy,* 861 F.2d at 129–30 (seaman injured in course of duties on vessel by falling off a defective vessel ladder, where defect in ladder was caused by land-based crane, was allowed to bring suit under maritime jurisdiction); *Carey v. Bahama Cruise Lines,* 864 F.2d 201, 207 n. 4 (1st Cir.1988) ("... an injury to a cruise ship passenger caused by a sliding gangway that connected the cruise ship to a tender is a uniquely maritime injury"); *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63 (2nd Cir.1988) (admiralty jurisdiction applied where passenger fell down flight of stairs aboard a cruise ship); *Smith v. Southern Gulf Marine Co. No. 2, Inc.,* 791 F.2d 416 (5th Cir.1986) (admiralty and maritime jurisdiction of federal courts exercised in slip and fall case brought by passenger of a crewboat transporting workers to an offshore platform). Accordingly, we find that this factor weighs in favor of exercising maritime jurisdiction.

4. *Traditional Concepts of the Role of Admiralty Law.*

"The overriding concern of the maritime law is the federal interest in the need for a uniform development of the law governing the maritime industries." *Woessner,* 757 F.2d at 648 (citing *Foremost,* 457 U.S. at

677, 102 S.Ct. at 2659). The traditional concerns of admiralty law require that there should be a uniform maritime rule specifying the duty of care owed by a shipowner to persons injured on his vessel, whether those persons be seamen, passengers, visitors, invitees, trespassers, licensees or permittees. *See Rutledge,* 633 F.Supp. at 656. Thus, this factor weighs in favor of exercising maritime jurisdiction.

In sum, application of the *Kelly* factors to Palmer's case indicates that the district court erred by refusing to allow the case to proceed under the general maritime law of negligence.

### CONCLUSION

We AFFIRM the district court's summary judgment order on Palmer's Jones Act and unseaworthiness claims. We REVERSE the summary judgment as it applies to Palmer's negligence claim under general maritime law and REMAND to the district court.[4]

---

**4.** We leave it to the district court to determine Palmer's exact role, the scope of the duty of care owed to her, and whether there has been a breach of that duty.