United States Court of Appeals,

Fifth Circuit.

No. 93-4865.
Summary Calendar

Elroy GASPARD, Plaintiff-Appellant,

and

Liberty Mutual Insurance Co., Intervenor-Plaintiff-Appellant,

v.

AMERADA HESS CORP., et al., Defendants,

Amerada Hess Corp. and Owensby & Kritikos, Inc., Defendants-Appellees.

Feb. 7, 1994.

Appeals from the United States District Court for the Western District of Louisiana.

Before WISDOM, JOLLY, and JONES, Circuit Judges.

WISDOM, Circuit Judge.

Plaintiff/appellant Elroy Gaspard fell off a wharf while attempting to board the barge M/V BOB III and was injured. The question in this case is whether the district court had admiralty jurisdiction over Gaspard's personal injury claims against the wharfinger and the wharfinger's agent. The district court concluded that it had no jurisdiction. We AFFIRM.

I.

Defendant/appellee Amerada Hess Corp. owns the "New Facility", an oil and gas production facility located on land near Bayou Gauche, an inland waterway in Louisiana. Amerada Hess hired Meaux Services, Inc. ("MSI") to sandblast and paint equipment located at the New Facility. Amerada Hess also hired defendant/appellee Owensby & Kritikos, Inc. ("O & K"), an independent inspection firm,

to supervise the sandblasting and painting. Amerada Hess also hired Central Gulf Towing, Inc. ("CGT") to charter and tow a barge, the M/V BOB III, to the New Facility. MSI's workers ate, took rest breaks, and stored their equipment aboard the barge during their work on the New Facility. The BOB III was moored to a wooden structure at the water's edge which the parties variously describe as a "retaining wall", a "wharf", and a "bulkhead". There was no gangplank leading to the barge. A three-foot gap separated the barge from the wharf. MSI's workers at the New Facility site had to step across that gap several times each day as they moved equipment to and from the barge.

Plaintiff/appellant Elroy Gaspard worked for MSI as a "painter's helper".[1] His responsibilities included mixing paint and retrieving equipment for the painting and sandblasting workers. He had no training or experience as a seaman.

On May 16, 1989, Gaspard was moving paint cans and other equipment onto the barge for storage. Gaspard slipped when attempting to step from the wharf to the barge. He fell from the wharf to a beam below, striking the barge during his descent, and injured his shoulder.

Louisiana's one-year statute of limitations for torts[2] passed

---

[1]Many of the facts in this section come from the "Statement of Material Facts as to Which There is No Genuine Issue" filed by Amerada Hess with its Motion for Summary Judgment in accordance with Local Rule 2.10 of the Western District of Louisiana. Gaspard's failure to file a response means that the facts in Amerada Hess's statement are admitted for purposes of Amerada Hess's summary judgment motion. *Loeber v. Bay Tankers, Inc.,* 924 F.2d 1340, 1345 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 78, 116 L.Ed.2d 51 (1991).

[2]La.Civ.Code Ann. art. 3492 (West Supp.1993).

without Gaspard filing any lawsuit over his injuries. In a belated attempt to resurrect his claim, Gaspard filed this lawsuit against Amerada Hess on June 13, 1991, grounding his claim in "Admiralty and ... General Maritime Law".[3]

Gaspard's simple claim against Amerada Hess soon blossomed to include numerous other parties and claims. First, Liberty Mutual Insurance Co., MSI's insurer, filed a plea in intervention naming Gaspard and Amerada Hess as defendants. Gaspard then twice amended his complaint to add O & K, CGT, the M/V BOB III, and McDonough Marine Service (the owner of the BOB III)[4] as defendants. In his second amended complaint, Gaspard for the first time invoked the Longshore and Harbor Workers' Compensation Act (LHWCA).[5] Amerada Hess cross-claimed against O & K and impleaded MSI, Reliance Insurance Co. of Illinois (O & K's insurer), and UNI Storebrand International Insurance A/S (MSI's insurer). After a few months of discovery and infighting, Amerada Hess, O & K, and CGT moved for summary judgment against Gaspard. The district court granted the motions and entered judgment for Amerada Hess, O & K, and CGT. The district court held that Gaspard had not pleaded a maritime tort and that accordingly it had no admiralty jurisdiction. Gaspard appealed to this Court only from the judgments in favor of Amerada

---

[3]Gaspard's Original Complaint, 1 Rec. 1. Undoubtedly the availability of a three-year statute of limitations figured prominently in Gaspard's decision to pursue an admiralty claim. *See* 46 U.S.C.App. § 763a; *Cooper v. Diamond M Co.,* 799 F.2d 176, 178 (5th Cir.1986), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987).

[4]Gaspard later voluntarily dismissed his claim against McDonough Marine Service.

[5]33 U.S.C. §§ 901-950; *see id.* § 905(b).

Hess and O & K.

                                    II.

     The sole issue on this appeal is whether the district court
had subject matter jurisdiction over Gaspard's claim.  Gaspard must
show that general maritime jurisdiction exists before the court can
reach the merits of his LHWCA claim.[6]

     The seminal Supreme Court case on the reach of federal
maritime tort jurisdiction is *Executive Jet Aviation, Inc. v. City
of Cleveland.*[7]    *Executive Jet* established a two-part
"locality-plus-nexus" test for maritime tort jurisdiction.  The
tort must have occurred on or over navigable waters, and the wrong
alleged must "bear a significant relationship to traditional
maritime activity."[8]  This Court has elaborated on the second part
of the *Executive Jet* test by listing four factors relevant to a
finding of a "significant relationship to traditional maritime
activity".  These factors are (1) "the functions and roles of the
parties", (2) "the types of vehicles and instrumentalities
involved", (3) "the causation and type of injury", and (4)

_____

     [6]"Our circuit clearly requires that maritime jurisdiction be
satisfied in addition to establishing a § 905(b) claim".  *Molett
v. Penrod Drilling Co.,* 872 F.2d 1221, 1225 (5th Cir.) (per
curiam), *reh'g denied,* 878 F.2d 829 (5th Cir.), *cert. denied,* 493
U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989).

     [7]409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972);  *see
also Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 673-74, 102
S.Ct. 2654, 2657-58, 73 L.Ed.2d 300 approving extension of
*Executive Jet* beyond the aviation context, *reh'g denied,* 459 U.S.
899, 103 S.Ct. 198, 74 L.Ed.2d 160 (1982).

     [8]*Executive Jet,* 409 U.S. at 268, 93 S.Ct. at 504.

"traditional concepts of the role of admiralty law".[9]  The parties in their briefs focus almost exclusively on the "maritime nexus" requirement of *Executive Jet.*  We agree that the nexus factor is dispositive here.  Because we conclude that Gaspard has not met the second part of the *Executive Jet* test, we need not address the first.

1.  *The Functions and Roles of the Parties.*[10]  Gaspard was a painter's helper employed to help paint and sandblast a facility on land.  Amerada Hess, owner of the facility, hired O & K to supervise the job.  None of the parties were engaged in peculiarly maritime activity at the time of Gaspard's injury.[11]  Gaspard's use of the barge as a storage facility is "connected to maritime affairs merely because performed aboard ship";  it is not a "task[ ] somehow unique to maritime service or work traditionally done by seamen".[12]

---

[9]*Kelly v. Smith,* 485 F.2d 520, 525 (5th Cir.), *reh'g denied,* 486 F.2d 1403 (5th Cir.1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974);  *Palmer v. Fayard Moving & Transp. Corp.,* 930 F.2d 437, 440 (5th Cir.1991).

[10]As used in the *Kelly* test, "parties" refers to the entities involved in the accident itself;  it is not used in the legal sense of parties to a lawsuit. *Watson v. Massman Constr. Co.,* 850 F.2d 219, 221 n. 3 (5th Cir.1988).

[11]*See, e.g., id.* at 222 (no admiralty jurisdiction over wrongful death claim by a construction worker building a bridge over the Mississippi River);  *Molett,* 872 F.2d at 1225 (plaintiffs were "land-based construction workers" insufficiently connected with maritime work to establish maritime nexus). Gaspard's brief styles him a "longshoreman";  we believe the facts indicate otherwise. *See Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 425, 105 S.Ct. 1421, 1428, 84 L.Ed.2d 406 (1985).

[12]*Woessner v. Johns-Manville Sales Corp.,* 757 F.2d 634, 644 (5th Cir.1985) (quoting *Harville v. Johns-Manville Products Corp.,* 731 F.2d 775, 784-85 (11th Cir.1984));  *Palmer,* 930 F.2d at 440.

2. *The Types of Vehicles and Instrumentalities Involved.* Gaspard's injury occurred while he was attempting to board the barge M/V BOB III. Gaspard never reached the BOB III; he fell from the wharf to a beam below. The accident neither began nor ended on the barge. "This was neither a collision case or one in which the movement of the barge played any part in the injuries".[13] The BOB III was not being used to ferry cargo, but only as a storage facility. The involvement of the BOB III here was too minor to support admiralty jurisdiction under this part of the *Kelly* test.

3. *The Causation and Type of Injury.* Gaspard fell from a wharf to a beam. We find nothing uniquely maritime in such an injury; it is not meaningfully different from a slip-and-fall injury occurring wholly on land. We have previously indicated that admiralty jurisdiction will not lie over incidents involving a mere fall from a dock as is the essence of Gaspard's claim here.[14]

4. *Traditional Concepts of the Role of Admiralty Law.* Admiralty law has traditionally not concerned itself with protecting land-based workers on projects adjoining the water. Too tenuous a connection exists between Gaspard's injury and any possible effect on commerce to support admiralty jurisdiction.[15]

---

[13]*Watson,* 850 F.2d at 222.

[14]*See Watz v. Zapata Off-Shore Co.,* 431 F.2d 100, 111 n. 14 (5th Cir.1970); *Heim v. City of New York,* 442 F.Supp. 35 (E.D.N.Y.1977).

[15]"[A] court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity". *Sisson v. Ruby,* 497 U.S. 358, 363, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990).

In sum, we find that the application of the *Kelly* factors supports the district court's conclusion that no admiralty jurisdiction exists in this case.

Because Gaspard's claim is not within the admiralty jurisdiction of federal courts, we have no cause to reach the merits of his claim under the LHWCA. We do not reach the question whether Amerada Hess, as the owner of the New Facility, owed a duty to provide a safe means of ingress and egress to the BOB III.

### III.

We conclude with a minor procedural observation. The district court stated that it was granting the defendants' motions for summary judgment on the basis that it lacked subject-matter jurisdiction over this case. We have previously expressed doubt as to the propriety of summary judgment as a tool for disposing of a case on jurisdictional grounds when the district court does not actually purport to address the merits of the parties' dispute.[16] When, as here, however, the jurisdictional question is inextricably intertwined with the merits of the dispute, summary judgment on the merits is an appropriate tool with which to resolve the case.[17]

The district court's judgment is AFFIRMED.

---

[16]*See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, n. 22 (2d ed. 1990) and cases cited therein.

[17]*See Tindall v. United States,* 901 F.2d 53, 55 n. 5 (5th Cir.1990).