James F. ALDERMAN, Plaintiff,

v.

PACIFIC NORTHERN VICTOR, INC.; Marco Alaska Northern Victor, Inc.; John Johannassen Victor, Inc.; and Lloyd Johannassen Victor, Inc. d/b/a Northern Victor, a general partnership, Defendants.

No. 93–50149–RV.

United States District Court, N.D. Florida, Panama City Division.

Sept. 29, 1994.

John Wesley Manuel, Urquhart and Pittman, Panama City, FL, for plaintiff.

Timothy R. Burr, Pro Hac Vice, Galloway, Johnson, Tompkins & Burr, New Orleans, LA, William H. Clark, Jr., Clark, Partington, Hart, Larry, Bond, Stackhouse & Stone, Pensacola, FL, and Jacalyn Kolk, Hilton, Hilton, Kolk & Penson, Panama City, FL, for defendants.

## ORDER

VINSON, District Judge.

Pending is the defendants' motion for summary judgment. (doc. 12). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

Except as noted, the following facts are undisputed in the record. Defendant Northern Victor, a general partnership, owns the *M/V NORTHERN VICTOR*, a vessel engaged in maritime commerce. Corporate defendants Pacific Northern Victor, Inc.; Marco Alaska Northern Victor, Inc.; John Johannassen Victor, Inc.; and Lloyd Johannassen Victor, Inc. are all partners in the Northern Victor partnership.

In early January of 1990, plaintiff James F. Alderman was employed to work aboard the *M/V NORTHERN VICTOR*, which at the time was docked and floating in navigable waters at the Eastern Shipyard in Allanton, Florida, where it was undergoing conversion from an oil drilling vessel to a fish processing vessel.[1] Alderman states in his affidavit that he is a carpenter by training and experience, and that he was employed to help install an elevator on the *M/V NORTHERN VICTOR*. His job duties aboard the ship were similar to those, and involved similar skills to those, of his earlier land-based employment.

On February 5, 1990, Alderman had left the ship to obtain a ladder. After reboarding the vessel, he slipped and fell on a puddle of oil on deck. The foreman's accident investigation report, which was completed at the time of the accident, reveals that the oil was from a codfish heading machine which was on deck.

The plaintiff filed his complaint in state court on June 1, 1993, alleging that he had sustained injuries in his fall due to the negligence of the defendants. The defendants timely removed the case to this Court on the basis of diversity of citizenship and admiralty jurisdiction. The defendants have moved for summary judgment, alleging that this cause of action is a maritime tort within this Court's admiralty jurisdiction, and that the applicable statute of limitations had expired prior to the commencement of the action.

## II. ANALYSIS

### A. *Summary Judgment Standard*

A motion for summary judgment should be granted when "the pleadings, depositions, an-

---

**1.** Plaintiff's affidavit asserts the conversion was from a freighter to a fish processing vessel, but this is not a material fact.

swers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. As the Supreme Court of the United States has instructed, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987).

■ However, summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id. See also Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

■ On summary judgment motion, the record and all inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Souran v. Travelers Ins. Co.,* 982 F.2d 1497, 1502 (11th Cir.1993). Furthermore, the court must consider the entire record in the case, not just those pieces of evidence which have been singled out for attention by the parties. *See Clinkscales v. Chevron U.S.A., Inc.,* 831 F.2d 1565, 1570 (11th Cir.1987).

### B. *Maritime Torts*

The dispositive issue here is whether plaintiff Alderman's negligence claim for his alleged injuries suffered abroad the *M/V*

*NORTHERN VICTOR* constitutes a maritime tort. The parties agree that if the claim is within the admiralty jurisdiction of this court, and thus governed by federal maritime law, the statute of limitations has run, and the claim is time barred.

■ For many years, the question of whether a tort claim was within the admiralty jurisdiction of the federal district courts was determined solely by the situs of the incident giving rise to the claim. "Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." *The Plymouth,* 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1866). However, in 1972, the Supreme Court of the United States modified the maritime tort jurisdictional requirements. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In addition to satisfying the navigable waters locality test, "the wrong [must] bear a significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 504, 34 L.Ed.2d at 467. The second prong of the *Executive Jet* test is commonly known as the "nexus" test.

■ The Supreme Court clarified the *Executive Jet* nexus test in two subsequent cases, *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), and *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). As outlined in *Sisson,* to satisfy the nexus test, the activity from which the incident arose must (1) have a substantial relationship to a traditional maritime activity, and (2) have a potentially (not necessarily actually) disruptive impact on maritime commerce. 497 U.S. at 364–365, 110 S.Ct. at 2896–97, 111 L.Ed.2d at 300–01. As Justice Scalia anticipated in *Sisson,* the amorphous standards of *Executive Jet* and its progeny have been difficult to apply, and have led to "complication and uncertainty in the law." 497 U.S. at 373, 110 S.Ct. at 2901, 111 L.Ed.2d at 306 (Scalia, J., concurring).

■ As the plaintiff notes in his memorandum, the Eleventh Circuit has analyzed

1498

the existence of maritime tort jurisdiction pursuant to the *Sisson* test. *Penton v. Pompano Construction Co.,* 976 F.2d 636, 640 (11th Cir.1992). It has also utilized the four-prong test adopted in *Kelly v. Smith,* 485 F.2d 520, 525 (5th Cir.1973), by the Former Fifth Circuit. *Cochran v. E.I. duPont de Nemours,* 933 F.2d 1533, 1537 (11th Cir. 1991), *cert. denied,* 502 U.S. 1035, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992). The initial determination I must make is whether the *Sisson* test or the *Kelly* test should be utilized in the analysis of this case. *Kelly* enunciated four factors to consider in determining whether a incident had the required nexus with traditional maritime activity: (1) the function and roles of the parties, (2) the types of vehicles and instrumentalities involved, (3) the causation and type of injury; and, most importantly, (4) the traditional concepts of the role of admiralty law. *Kelly v. Smith, supra,* 485 F.2d at 525. In *Sisson,* the Supreme Court noted that the four-part *Kelly* test was the most widely adopted method of analyzing its *Executive Jet* and *Foremost Insurance Co.* standard, and declined to modify or overrule it. *Sisson v. Ruby,* 497 U.S. at 364 n. 4, 110 S.Ct. at 2898 n. 4, 111 L.Ed.2d at 301 n. 4. Therefore, I conclude that the two tests are complimentary and will utilize both here.

■ In this case, it is undisputed that the plaintiff was aboard the *M/V NORTHERN VICTOR* and it was in navigable waters at the time of his alleged injury. Thus, the locality test for maritime tort jurisdiction is satisfied. It is also undisputed that the *M/V NORTHERN VICTOR* was a vessel which had been previously engaged in maritime commerce, and which was undergoing renovations to be fitted out as a fish processing vessel. To demonstrate the required nexus to traditional maritime activities, the defendants rely upon the well-established (but often criticized) rule that a contract to construct a new vessel is not maritime, but a contract to repair, alter, or reconstruct a vessel which has previously been in navigation is maritime. *Kossick v. United Fruit*

*Co.,* 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *New Bedford Dry Dock Co. v. Purdy,* 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922). In short, once a ship has entered maritime service, it continues in a maritime status.

The plaintiff readily admits that a contract to reconstruct a ship is maritime, but asserts that a tort is not necessarily maritime simply because it arises during the performance of a maritime contract. The plaintiff stresses the nature of his job duties, asserting that he was a carpenter and that there was nothing uniquely maritime about his job responsibilities or vocational skills. He maintains that while the vessel may have had a maritime status, he did not. The plaintiff relies primarily upon two cases which have held that a claim for asbestosis arising from exposure to asbestos, which occurred, at least in small part, aboard a vessel in navigable waters is not within the admiralty jurisdiction of the federal courts, [*Cochran v. E.I. duPont de Nemours, supra,* 933 F.2d at 1539; *Harville v. Johns–Manville Products Corp.,* 731 F.2d 775, 781 (11th Cir.1984) ], and that the claim of a worker injured while unloading a crane's clam bucket from a barge on to land after the completion of construction of a jetty is not a maritime tort. *Penton v. Pompano Construction Co., Inc.,* 976 F.2d 636, 640 (11th Cir.1992).[2]

The plaintiff's stress upon the nature of his carpentry tasks is misplaced. The plaintiff's alleged injuries are not integral to his role as a carpenter, and do not directly arise from any unique function of a carpenter. He alleges that, away from his work area, he slipped and fell on a puddle of oil on the deck of the ship. These facts simply present a standard slip-and-fall accident aboard a vessel.

The Fifth Circuit recently considered a legally analogous situation in *Palmer v. Fayard Moving and Transportation Corp.,* 930 F.2d 437 (5th Cir.1991). There, Wanda Palmer was employed by Fayard Moving and Transportation Corp., which owned the *M/V FRANCES FAYARD,* as a public relations

**2.** In *Penton,* the court observed that while a floating barge was involved, the actual cause of the injury was the action of a co-worker operat-

ing a backhoe on land. Thus, it found that it failed the first prong of the *Sisson* test.

agent. Palmer was a land-based employee, but she occasionally performed some duties aboard the vessel. Palmer slipped on a ladder while boarding the ship, fell and was injured. The *Palmer* court analyzed the case under the four *Kelly* factors.

The Court held that Palmer's duties were "identical to those undertaken by land-based workers and are connected to maritime affairs merely because performed aboard ship," and were, therefore, "not connected to traditional maritime activity." 930 F.2d at 440. However, despite the failure of a slip-and-fall accident of a non-seaman to meet the first prong of the *Kelly* test, because the remaining three factors weighed heavily in favor of admiralty jurisdiction, the court held that a slip-and-fall accident aboard a vessel was a maritime tort.

I agree with the Fifth's Circuit's analysis in *Palmer*. Even if I assume that Alderman's job duties as a carpenter fail to meet the maritime function and role factor of the *Kelly* test, the other three factors weigh heavily in favor of admiralty jurisdiction. The vehicle involved in this case is a seagoing vessel; the instrumentality creating the oil leak was the vessel's codfish-heading machine, both unquestionably maritime. As to the causation and type of injury: "Injuries caused by slip and fall accidents on board a vessel have consistently been found to constitute maritime torts." *Palmer, supra,* 930 F.2d at 441. Finally, the traditional concepts of the role of admiralty law favor the exercise of admiralty jurisdiction. "The traditional concerns of admiralty law require that there should be a uniform maritime rule specifying the duty of care owed by a shipowner to persons injured on his vessel, whether those persons be seamen, passengers, visitors, invitees, trespassers, licensees or permittees." *Id.*

The *Sisson* test yields the same results. I begin by examining the relevant activity giving rise to the incident. *Sisson v. Ruby,* 497 U.S. at 364, 110 S.Ct. at 2897, 111 L.Ed.2d at 301. "Our cases have made clear that the relevant 'activity' is defined not by the particular circumstances of the incidence, but by the general conduct from which the incident arose." *Id.* The general activity in this case is the reconstruction and refurbishing of the vessel. The incident giving rise to the injury was the placement of a machine being installed as part of the conversion of the *M/V NORTHERN VICTOR* to a fish processing vessel, and the resulting leakage of oil from the machine. That is certainly related to a traditional maritime activity.

In this case, the second step in the *Sisson* test mirrors that of the fourth factor of the *Kelly* test. The potential disruption of applying various non-maritime laws is the equivalent of applying the traditional concepts of the role of admiralty law. Unsafe conditions on the decks of commercial vessels, and the lack of a uniform maritime rule specifying the duty of care owed by a shipowner to persons injured on his vessel, certainly have a potentially disruptive impact on maritime commerce. Therefore, the only conclusion I can reach is that this was a maritime tort within the test laid down in *Sisson.*[3]

It is possible to envision claims of a carpenter injured while reconstructing a vessel that might not constitute a maritime tort. If, for example, the plaintiff had been injured by a power saw he was using while working as a carpenter aboard the ship, and he had brought a design defect products liability claim against the manufacturer, I doubt that his claim would be within the admiralty jurisdiction. However, that is not this case. The plaintiff has not cited, nor have I discovered, any reported case holding that a shipboard slip-and-fall negligence claim is not a maritime tort. This case is a claim cognizable within the admiralty jurisdiction of this court and is governed by the general maritime law of negligence, including the applicable statute of limitations.

The plaintiff alleges in his complaint that he was injured on February 5, 1990. The

---

**3.** See also Justice Scalia's concurring opinion in *Sisson* in which he dismisses concerns about the occasional "freakish" cases that the traditional maritime tort jurisdictional might permit, noting that they are no different in principle than the "slip-and-fall" case, which he presumed without any discussion to be within the *Sisson* jurisdictional limits. *Sisson v. Ruby,* 497 U.S. 358, 374, 110 S.Ct. 2892, 2902, 111 L.Ed.2d 292, 307 (1990).

record reflects that the complaint was originally filed on June 1, 1993. A suit for recovery of personal injuries arising out of a maritime tort cannot be maintained unless commenced within three years from the time the cause of action accrued. 46 App.U.S.C. § 763(a). Thus, the action was not timely filed, and the suit is barred by the statute of limitations as a matter of law. Accordingly, the defendants' motion for summary judgment is GRANTED, and the Clerk shall enter judgment for the defendants, together with taxable costs.

DONE AND ORDERED.