## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CA-01294-SCT

*DOROTHY A. LANE*

*v.*

*GRAND CASINOS OF MISSISSIPPI, INC. - GULFPORT*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/25/95 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN RANDALL SANTA CRUZ |
| ATTORNEY FOR APPELLEE: | RICHARD P. SALLOUM |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 3/26/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/16/98 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Dorothy Lane, while a janitorial service employee of the Gulfport Grand Casino, suffered injuries to her shoulder when she fell after being struck by a buffing machine operated by a fellow employee. Lane brought suit arguing that she was entitled to recover under the Jones Act and general maritime law.

¶2. Grand Casino argues that Lane was not entitled to relief under the Jones Act or general maritime law because Lane was not a seaman and the Grand Casino was not a vessel within the meaning of either the Jones Act or general maritime law. Grand Casino subsequently moved for summary judgment arguing that Lane was not a seaman for purposes of the Jones Act or general maritime law and that dockside casinos are not vessels within the meaning of either the Jones Act or general maritime law. The circuit court granted summary judgment in favor of Grand Casino and dismissed the suit. Lane appealed to this Court arguing that the trial judge erroneously determined that a dockside casino does not constitute a vessel for purposes of the Jones Act or general maritime law.

¶3. This Court has recently considered this exact factual situation and held that an employee under similar circumstances could not qualify as a seaman, thus the employee was not entitled to Jones Act or general maritime law benefits. *See **Thompson v. Casino Magic Corp.**, No. 96-00458-SCT, (Miss.*

Mar. 12, 1998). The **Thompson** Court stated, "However, it should be made clear that in each case the trial court must consider the factual circumstances of each particular case in light of the concerns expressed in this opinion as well as by the Fifth Circuit's comments in *Pavone v. Mississippi Riverboat Amusement Corp.* as quoted *supra* when determining if a particular barge is a vessel for purposes of federal maritime jurisdiction. On the facts of this particular case, since Thompson is not a seaman, we need not determine whether the Casino Magic Barge is a vessel for maritime purposes." *Thompson*, No. 96-00458-SCT, slip op. at 6.

¶4. Considering the facts of this particular case, we find that Lane's position of employment in janitorial service did not constitute a substantial relationship to the navigation of the Grand nor expose her to the perils of the sea. Lane was merely a land based janitorial employee who happened to be working on the Grand at the time of the accident. Thus, Lane was not a seaman for purposes of the Jones Act or general maritime law. This Court need not determine whether the barge at issue is a vessel for maritime purposes.

## STATEMENT OF FACTS

¶5. Dorothy Lane (hereinafter "Lane") was employed by the Gulfport Grand Casino (hereinafter "the Grand") and served in the capacity of janitorial services when on or about March 23, 1994, Lane received injuries to her left shoulder when she fell after being struck by a buffing machine operated by a fellow employee. On November 23, 1994, Lane filed her complaint alleging negligence on the part of the casino and its employees. Lane alleged that she was entitled to recover damages under the Jones Act and general maritime law because the dockside casino is a vessel for purposes of admiralty jurisdiction.

¶6. In response, the Grand denied liability and argued that Lane was not entitled to recover under the Jones Act or general maritime law because she was not a seaman nor is the casino a vessel. Furthermore, the Grand asserted that Lane's exclusive remedy was the Mississippi Compensation Act under which compensation and medical benefits were being paid. On July 14, 1995, the Grand filed a Motion for Summary Judgment and for Sanctions.

¶7. After review, Judge Vlahos, relying on precedent of the Fifth Circuit Court of Appeals, granted summary judgment in favor of the Grand Casino and dismissed the case with prejudice holding that the Grand Casino was not a vessel for purposes of the Jones Act or general maritime law. Judge Vlahos specifically found:

> The Gulfport Grand Casino is a barge platform and falls outside any of the tests for vessel status. It was not designed as a vessel for the transportation of passengers, equipment, or cargo, but as a dockside, shore based casino. Any navigational function of the Gulfport Grand Casino is incident to its primary purpose of serving as a stationary dockside casino. At the time of the Plaintiff's alleged accident, the Gulfport Grand Casino was not in navigation but was securely fastened to its dockside mooring cells in inland waters and had been so secured over the preceding fourteen months.

¶8. From this ruling, Lane now appeals to this Court.

## STANDARD OF REVIEW

¶9. This Court, in ***Richmond v. Benchmark Construction Corp.***, set forth the appropriate procedure for reviewing a case dismissed by the trial court on summary judgment grounds as follows:

> Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving part[y] is entitled to judgment as a matter of law. To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the Rule. ***Lyle v. Mladinich***, 584 So.2d 397, 398 (Miss.1991).
>
> This Court employs a *de novo* standard of review in reviewing a lower court's grant of summary judgment. ***Short v. Columbus Rubber & Gasket Co., Inc.***, 535 So.2d 61, 63 (Miss.1988). Evidentiary matters are viewed in the light most favorable to the non-moving party. ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So.2d 1346, 1354 (Miss.1990). If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. ***Brown v. Credit Ctr., Inc.***, 444 So.2d 358, 362 (Miss.1984).

[*Richmond v. Benchmark Constr. Corp.*, 692 So. 2d 60, 61 (Miss. 1997)](#).

## DISCUSSION OF LAW

### WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE GULFPORT GRAND CASINO.

¶10. Lane contends that the circuit court erroneously granted summary judgment to the Grand Casino by concluding that the Grand was not a vessel for purposes of general maritime law and that Lane was not a seaman. The Grand contends that summary judgment was appropriate because the pertinent facts established as a matter of law that the Grand was not a vessel within the meaning of the Jones Act or general maritime law. However, this Court finds that the trial court judge correctly granted summary judgment because Lane fails to attain seaman status.

¶11. In order to recover under the auspices of the Jones Act or general maritime law, a plaintiff must establish that he/she is a "seaman." [*Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 87 (1991)](#). "Seaman status is ordinarily a question for the trier of fact and even where facts are largely undisputed, the jury's role should not be lightly short-circuited." ***Daniel v. Ergon, Inc.***, 892 F.2d 403, 407 (5th Cir. 1990) (citing ***Bernard v. Binnings Constr. Co.***, 741 F.2d 824, 827 (5th Cir. 1984)). "Thus, the issue of seaman status 'should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances . . . and even marginal Jones Act claims should be submitted to the jury.'" ***Daniel***, 892 F.2d at 407 (quoting ***Bernard***, 741 F.2d at 827). "However, where the 'only rational inference to be drawn from the evidence is that the worker is not a seaman,' summary judgment is proper." ***Id.*** (quoting ***Beard v. Shell Oil Co.***, 606 F.2d 515, 517 (5th Cir. 1979)).

¶12. In ***Chandris, Inc. v. Latsis***, the United Sates Supreme Court, after a lengthy historical discussion of the various approaches that different federal courts have taken in determining seaman status for purposes of the Jones Act and general maritime law, stated that there were two essential requirements for seaman status to exist. [*Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995)](#). The

Court described the two essential requirements as follows:

> First, as we emphasized in *Wilander*, "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" 498 U.S., at 355 (quoting *Robison*, 266 F.2d, at 779). The Jones Act's protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: "All who work at sea in the service of a ship" are *eligible* for seaman status. 498 U.S., at 354.
>
> Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. See 1B A. Jenner, Benedict on Admiralty § 11a, pp. 2-10.1 to 2-11 (7th ed. 1994) ("If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied" (footnote omitted)). This requirement therefore determines which maritime employees in *Wilander*'s broad category of persons eligible for seaman status because they are "doing the ship's work," 498 U.S., at 355, are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation.

*Chandris*, 515 U.S. at 368-69. The Court further stated that all of the various approaches in determining seaman status employed by the Courts of Appeals arrive at the same point:

> The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to "the special hazards and disadvantages to which they who go down to sea in ships are subjected." *Sieracki*, 328 U.S., at 104 (Stone, C. J., dissenting). Indeed, it is difficult to discern major substantive differences in the language of the two phrases. In our view, "*the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon*." *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (CA5 1984). The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Chandris*, 515 U.S. at 370 (emphasis added). The United States Supreme Court concluded that in order to attain seaman status "a seaman must have a substantial connection with a vessel in navigation both in duration and nature." *Id.* "The status of the individual as a seaman is based on his/her substantial status as a member of the crew, and the substantial relationship to the vessel and its navigation in the water." *Thompson*, No. 96-00458-SCT, slip op. at 8 (citing *Chandris*, 515 U.S. at 360-61).

¶13. Two years later, in ***Harbor Tug & Barge Co. v. Papai***, the United States Supreme Court revisited its two essential requirement test for determining seaman status set forth in ***Chandris***. *[Harbor Tug & Barge Co. v. Papai](), ____ U.S. ____, 117 S. Ct. 1535, 1540 (1997)*. The Supreme Court stated that whether an employee satisfies seaman status often will turn on the second standard in ***Chandris*** "which requires the employee to show a 'connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.'" *[Papai](), 117 S. Ct. at 1540* (quoting *[Chandris](), 515 U.S. at 368*). The Supreme Court further explained the appropriate analysis under this second standard as follows:

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*[Id.]()*

¶14. In the case *sub judice*, the trial court correctly granted summary judgment to the Grand. Summary judgment was appropriate in this case because at no point in her employment at the Grand did Lane attain seaman status under the criteria set forth in ***Chandris***. In order for Lane to achieve seaman status while working on the Grand, her employment would have had to reach the level of a substantial connection to the Grand in terms of both its duration and its nature.

¶15. In ***Thompson***, this Court held that:

> Thompson was not a seaman for two distinct reasons. First, Thompson's relationship to a ship in navigation (the Dubuque Belle) was so temporal that she was not a seaman. Thompson had no duties while the boat was in motion, she slept at home, boarded off ship and was an hourly wage earner. Therefore Thompson was more like a casual worker on the water, not a seaman. Second, she was not a seaman because she fails to classify as part of the crew with regard to navigation and operation of the Dubuque Belle at sea. Clearly, if the Dubuque Belle left the dock and sailed around the Gulf of Mexico and Thompson was on board as a change person, she would probably be considered a seaman.

*[Thompson](), No. 96-00458-SCT, slip op. at 9-10*.

¶16. In requiring that these type cases must be determined on their respective particular facts, this Court in ***Thompson*** also noted that:

> [T]o say a casino barge is not a "vessel" under federal maritime law in all circumstances is overly broad and incorrect. These barges are capable of moving on navigable waters and several casino barges have been moved due to inclement weather as well as to relocate for business reasons. If an accident occurs during one of these moves and a worker is injured during that move, it is possible that the worker may classify as a "seaman" and his claim should not be barred because this Court has determined as a matter of law that the casino barge is not a "vessel."

*Id.* at 5.

¶17. Under the facts of this case, there exists no factual dispute that Lane's employment status with the Grand failed to reach the level of seaman status. First of all, the Grand was not a vessel in navigation. At the time of Lane's injury, the Grand was a stationary dockside casino that had never been used in navigation, was securely fastened to its dockside mooring cells in inland waters, and had been secured over the preceding fourteen months. Second, Lane was employed in janitorial services and was injured while assisting in the cleaning of one of the bathrooms on the Grand. Lane had no duties while the casino boat was in motion, she slept at home, boarded off the Grand and was an hourly wage earner. Further, she was not a seaman because she fails to classify as part of the crew with regards to the navigation and operation of the Grand at sea. Granted, had the barge sailed from dock on the open sea and Lane was injured while on board as a janitor, we possibly would be faced with a different result because Lane might qualify as a seaman. *See id.* at 5.

¶18. The Jones Act was passed to provide further protection for persons who subjected themselves to the perils of the sea. *Chandris*, 515 U.S. at 370. It is obvious that Lane did not have a substantial relation to the navigation of the Grand nor was she exposed to the perils of the sea. *Id.* Here, "[w]here the 'only rational inference to be drawn from the evidence is that the worker is not a seaman,' summary judgment is proper." *Daniel v. Ergon, Inc.*, 892 F.2d 403, 407 (5th Cir. 1990) (quoting *Beard v. Shell Oil Co.*, 606 F.2d 515, 517 (5th Cir. 1979)). We hold, as in *Thompson*, that under the facts of this particular case, that at the time of the accident, Lane was nothing more than a land-based employee who happened to be working on the Grand at a given time, and thus, Lane can not be classified as a seaman.

## CONCLUSION

¶19. In order to recover under the auspices of the Jones Act or general maritime law, a plaintiff must establish that he/she is a "seaman." *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 87 (1991). Even considering the facts in the most favorable light to Lane's claims, Lane fails to attain seaman status. Lane's connection to a vessel in navigation falls short of reaching a level substantial in both its duration and its nature and, thus, fails to satisfy the criteria set forth in *Chandris*. Summary judgment was appropriate in the instant case because no factual dispute existed as to whether Lane was a seaman for purposes of the Jones Act or general maritime law. The only rational inference to be drawn from the evidence is that Lane is not a seaman. *Daniel*, 892 F.2d at 407. Therefore, the decision of the trial court to grant the Motion for Summary Judgment in favor of the Grand Casino is affirmed.

¶20. **JUDGMENT AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

   **McRAE, JUSTICE, DISSENTING:**

¶21. Once again, the majority has missed the boat in construing so narrowly two of the requisites of seaman status: contribution to the function or mission of a vessel and connection with a vessel in navigation which is substantial both in nature and duration. I disagree with the conclusion that

Dorothy Lane, a janitor injured while cleaning a bathroom on the Grand Casino gambling ship, is not a seaman for purposes of the Jones Act or general maritime law. Accordingly, I dissent.

¶22. Pursuant to the Jones Act and general maritime law, "seaman" status depends on three factors: "(1) the vessel on which the claimant was employed must be in navigation; (2) the claimant must have a more or less permanent connection with the vessel; and (3) the claimant must be aboard primarily to aid in navigation." *Omar v. Sea-Land Service, Inc.,* 813 F.2d 986, 988 (9th Cir. 1987) (quoting *Estate of Wetzel v. Seaward Marine Services, Inc.* 709 F.2d 1326, 1327 (9th Cir. 1983) and citing *Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 190-191, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952)). The term "seaman" long has been construed liberally to include "all those on board whose labor contributes to the accomplishment of the main object in which the vessel is engaged." *Osland v. Star Fish & Oyster Co.,* 107 F. 2d 113 (5th Cir. 1939). *See also The J.S. Warden,* 175 F. 314 (D.C.N.Y. 1910)(Hand, J.)("As I can see in principle no reason why there should be an artificial limitation of rights to those engaged in the navigation of the ship, to the exclusion of others who equally further the purposes of her voyage . . . I shall decide that the libelant has a lien for his wages as a bartender."). Thus, cooks, stewards, pursers, porters, chambermaids, laundresses, bartenders, barbers, fishermen all have been afforded seaman status for purposes of obtaining seaman's remedies. M. Norris, The Law of Seamen, § 2:3 (4th ed. 1985). Clearly, Lane's duties as a janitor furthered the Grand's purpose as a gaming vessel. That she slept at home, earned hourly wages and had no duties while the boat was in motion are of no relevance to the issue of whether she contributed to the vessel's function or purpose nor do those factors impact the "permanence" of her relationship to the vessel. Moreover, as the case law overwhelmingly illustrates, seaman status is not reserved only for those who are involved literally in the navigation of a vessel. Thus, in *Texaco, Inc. v. Addison*, 613 So. 2d 1193 (Miss. 1993), we found that a roustabout on a welding barge used to reconstruct an offshore fixed platform oil storage and collection facility was a Jones Act seaman. Addison, like Lane, was an hourly wage earner who slept on shore. He spent nine to ten hours a day on the welding barge platform. He was injured when he fell while carrying some pipes. At the time of the accident, the barge platform was moored to a tank battery mounted on piles permanently driven into the floor of the Gulf.

¶23. The Fifth Circuit's decision in *Palmer v. Fayard Moving and Transportation Corp.,* 930 F. 2d 437 (5th Cir. 1991) provides further support for Lane's claim. Palmer, a public relations agent for Fayard Moving, was injured when she slipped on a ladder while boarding the M/V FRANCES FAYARD. Using the test set out in *Offshore Co. v. Robison,* 266 F.2d 769, 778-779 (5th Cir. 1959), the Fifth Circuit found that Palmer, unlike Lane, was employed primarily in a land-based position and thus did not meet the first part of the *Robison* test.[1] *Robison* provides:

> [T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.

*Id.* at 778. *See also McDermott Int'l., Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 816, 112

[L.Ed.2d 866 (1991)](#)(following *Robison*). As distinguished from Palmer, who spent only nineteen percent of her time working on the boat, Lane's duties cleaning the Grand's bathrooms required that she perform all of her work on the vessel.

¶24. Today's majority further denies Lane seaman status because of its finding that at the time of her injury, the Grand was not a "vessel in navigation" since it was "a stationary dockside casino that had never been used in navigation, was securely fastened to its dockside mooring cells in inland waters, and had been secured over the preceding fourteen months." In so finding, the majority apparently overlooks the basic precept that for purposes of the Jones Act, "vessel in navigation" means that it is "engaged as an instrument of transportation and commerce on navigable waters" and need not be "*plying the seas*" at the time an injury occurs.[(2)] Norris, The Law of Seaman, § 2:8 (4th ed. 1985). The Grand was engaged in commerce to the same extent as any other pleasure ship, e.g., the "Love Boat" or any vessel used for entertainment rather than for shipping cargo. Under Mississippi law, it was required to be moored in navigable waters and was, at the time of Lane's accident, so located. Further, it matters not the Grand had been moored for fourteen months; it need only be *capable* of navigation. In *Addison,* we found that a welding barge, moored to tank battery supported by pilings driven into the floor of the bay, was a vessel for purposes of the Jones Act. *Addison,* 613 So. 2d at 1200. In that case, we noted with approval Louisiana's use of the maritime law "capability test" which defines a "vessel" as encompassing "'every description of water craft or other contrivance used or capable of being used as a means of transportation on water.'" *Id.* (quoting *Orgeron v. Avondale Shipyards, Inc.*, 561 So. 2d 38, 41 (La. 1990)). In *Orgeron*, a barge used as a work platform *was* found to be a "vessel" because it was capable of navigation on water and at the time of the accident, it was floating on navigable water. *Orgeron*, 561 So. 2d at 43. The Grand was afloat in navigable waters at the time of Lane's injury. It may be towed and thus, it is capable of navigation. It matters, not, therefore, that it was moored at the time of Lane's injury or that the vessel was not sailing the bounding main.

¶25. "Seaman status is ordinarily a question for the trier of fact and even where the facts are largely disputed, the jury's role should not be lightly short-circuited." *Daniel v. Ergon, Inc.,* 892 F. 2d 403, 407 (5th Cir. 1990). As the Fifth Circuit further stated, in language quoted by the majority, "the issue of seaman status 'should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances . . . and even marginal Jones Act claims should be submitted to the jury.'" *Daniel,* 892 F. 2d at 407 (quoting *Bernard v. Binnings Construction Co.,* 741 F. 2d 824, 827 (5th Cir. 1984)). Summary judgment is proper only "where the 'only rational inference to be drawn from the evidence is that the worker is not a seaman.'" *Id.* (quoting *Beard v. Shell Oil Co.,* 606 F. 2d 515, 517 (5th Cir. 1979). In the case *sub judice,* that Lane was not a seaman is not the only rational inference that can be drawn from the evidence. Accordingly, I disagree with the majority's decision to affirm the circuit court's award of summary judgment to Grand Casino.

1. It bears note that while the Fifth Circuit found that the land-based Palmer was not a Jones Act seaman, the court found that she still could invoke admiralty jurisdiction and pursue a negligence claim under general maritime law since she was injured while the vessel was moored in navigable waters and she was, at the very least, a passenger aboard the vessel. *Palmer,* 930 F.2d 439-441.

2. Even if the Grand does not meet the majority's narrow construction of vessel, *Robison's* definition of vessel includes "special purpose structures not usually employed as a means of transport by water but designed to float on water." *Robison,* 266 F.2d at 778.