REVISED, February 2, 1998

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-60415
_____

JIMMY NEWTON,

Plaintiff-Appellee/Cross-Appellant,

versus

LEE ROY BLACK, ET AL.,

Defendants,

JAMES BREWER,

Defendant-Appellant/Cross-Appellee,

TOMMY ROSS,

Defendant/Cross-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____
January 13, 1998

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

With regard to this action for 42 U.S.C. § 1983 and state law claims, in which Jimmy Newton, a state prisoner, alleged that he was beaten by another inmate as a result of, *inter alia*, the negligence of Lieutenant James Brewer, a prison official, the primary issue at hand is whether, under Mississippi law, Lieutenant Brewer had a ministerial duty to report a threat against Newton and

is, therefore, not entitled to qualified immunity. Lieutenant Brewer appeals the $10,000 judgment for Newton on his state-law negligence claim, maintaining that he is entitled to qualified immunity; Newton cross-appeals the adequacy of those damages and the dismissal of his Eighth Amendment failure-to-protect claim. Concluding that Lieutenant Brewer is entitled to qualified immunity under Mississippi law, and that the district court properly dismissed Newton's other claims, we **AFFIRM IN PART**, and **REVERSE** and **RENDER IN PART**.

I.

Newton's *pro se* and in forma pauperis civil rights complaint, filed in mid-1991 against various Mississippi State Penitentiary officials, including Lieutenant Brewer, pursuant to § 1983 and state law, alleged that the defendants' deliberate indifference, failure to provide adequate protection, and gross negligence resulted in his being beaten by an unidentified inmate. In an amended complaint, he alleged that he had reported to Lieutenant Brewer that he had been threatened by inmate Melvin Walls. After conducting a **Spears** hearing, *see* **Spears v. McCotter**, 766 F.2d 179 (5th Cir. 1985), the magistrate judge determined that Newton had failed to show that the defendants had acted with deliberate indifference, and recommended that the complaint be dismissed as frivolous, pursuant to 28 U.S.C. § 1915(d) (now § 1915(e)).

The district court rejected that recommendation, because the magistrate judge had failed to consider Newton's amended complaint, including the allegation that he had relayed Walls' threats to at

- 2 -

least one of the defendants.  Therefore, the case was referred to the magistrate judge for further proceedings.

In a second amended complaint, Newton was represented by counsel.  Named defendants were Steve Puckett (Superintendent of the Mississippi State Penitentiary), Captain Tommy Ross, and Lieutenant Brewer; and Newton added a claim for denial of adequate medical treatment.

At an evidentiary hearing before the magistrate judge, Newton testified that, on 6 March 1991, between 7:00 and 8:00 a.m., an inmate (whom he could not then identify by name, but who was later identified as Walls during Newton's brief meeting with Lieutenant Brewer) threatened Newton because he would not give Walls a cup of coffee; that, at around 10:00 a.m., he reported the threat to Lieutenant Brewer and told the Lieutenant that he wanted either Walls or himself transferred; that, around 10:30 a.m., while he (Newton) was talking to Lieutenant Brewer, Walls walked into the Lieutenant's office and told the Lieutenant that he would hurt Newton if Lieutenant Brewer did not return Walls' property that had been confiscated; that Lieutenant Brewer had been more concerned about Newton finishing his cleaning duties than about Walls' threat; and that, at approximately 11:00 a.m., while he (Newton) was watching television, Walls assaulted him, striking him in the mouth and face with a broom handle.

When asked what Lieutenant Brewer could have done to prevent the assault, Newton responded that the officials should have known that Walls was a threat to inmates housed in his unit; and that

Lieutenant Brewer could have looked into the situation further and transferred him or Walls to another unit.

On cross-examination, Newton testified that, after Lieutenant Brewer talked to Walls, the Lieutenant ordered Walls to pack his belongings, because Lieutenant Brewer was going to transfer him; but that, prior to the assault, after Walls had packed his belongings, another Officer told him to unpack.

Walls testified that his dispute with Newton sprang from Walls' walking across the floor Newton was mopping on the morning of the incident (as noted, Newton said the dispute was instead over coffee); that he (Walls) told Lieutenant Brewer that he wanted to be transferred and, if not, "somebody was going to get hurt"; and that he was angry with Lieutenant Brewer because the guards had confiscated an earring from him (Walls). According to Walls, when a prisoner threatens someone "[t]hey are supposed to move one ... of the inmates to a different section". On cross-examination, Walls denied having been in Lieutenant Brewer's office with Newton that morning.

Captain Ross testified that Lieutenant Brewer was working under his supervision on the day of the incident; that, also pre-assault, Lieutenant Brewer did not report any incident involving Walls and Newton; that, also prior to the assault, he was aware that Walls was a "trouble maker", but not that he was violent; and that, with respect to the incident, everything was done that could have been done, because there is no way to prevent a spur-of-the-moment assault.

- 4 -

Captain Ross admitted, however, that the attack would have been prevented had Walls been moved pre-assault; and that, if Walls had told him he was going to hurt another inmate, he would have put him in the holding cell. Regarding such Department of Corrections policy, Captain Ross testified as follows:

> Q   Now, you would agree with me that the policy of the [Mississippi Department of Corrections] on March 6th, 1991 [the day of the incident], if an inmate advised an officer that he was going to hurt another inmate, that either the inmate making the threat or the inmate being threatened *should be removed*, correct?
>
> A   Even the most inexperienced staff member at Parchman would immediately take action.
>
> Q   Should take action, correct?
>
> A   They would take action.
>
> Q   And if an officer knew of a threat being made, he should also file [a rules violation report], is that correct, against the inmate making the threat?
>
> A   If there was evidence that the threat was made, he would do the incident report and the [rules violation report] and isolate, whichever one.
>
> Q   You remember telling me in your deposition that an investigation into a threat should be started as soon as the threat is made or is made known to the officer?
>
> A   Immediately.
>
> Q   No time should be wasted?
>
> A   No time wasted.
>
> Q   Because if any time is wasted, it could result in danger to the inmate or another officer, correct?
>
> A   Yes, sir.

- 5 -

> Q    And if ... an officer did not immediately start an investigation and knew that a threat was made, he would be derelict in his duties, correct?
>
> A    *If it was a serious threat* and it was a threat upon another inmate I would say he would be derelict in his duty; yes, sir.

(Emphasis added.)

Lieutenant Brewer, the administrator of the unit where Newton and Walls were housed on the day of the incident, testified that, on that day, he confiscated an earring from Walls at around 7:45 a.m.; and that, at approximately 8:30 a.m., Walls told him that he wanted to be moved if he could not have his earring back and "would be a problem" if he was not moved. Lieutenant Brewer testified that he did not understand Walls to be making a threat, but merely talking "in the heat of anger". According to Lieutenant Brewer, he told Walls to pack his bag, and Walls did so; he talked to Walls again, and explained that Walls would lose the opportunity to get an education if he moved to another unit; and Walls understood and was willing to stay.

Lieutenant Brewer also testified that Walls did not mention Newton's name; and that Newton did not tell him that Walls had threatened him. *Lieutenant Brewer testified further that, prior to the assault, he did not know about Walls' reputation for violence; but that he considered all offenders dangerous and violent.* Regarding Department of Corrections policy when one inmate threatens another inmate, Lieutenant Brewer testified as follows:

> Q    ... the policy concerning when an inmate threatens another inmate?

- 6 -

A     Right.

Q     Or an officer?

A     Right.

Q     Is to transfer one of them?

A     Right.

....

Q     Okay.  So you called [sic] somebody and say, I have got a prisoner who has made a threat and I need to transfer that prisoner or put the other one in protective custody, right?

A     As I stated, I never heard Inmate Walls threaten anyone.

....

Q     I am asking you what the [Mississippi Department of Corrections] policy is when you have a problem with an inmate, he threatens somebody?  What do you do with that inmate?

     You transfer him, right, or put the other one in protective custody, right?

A     *The only thing that I can do is request that he be transferred.  I can't transfer him.... [I]f ... one makes a threat, I will call my supervisor.*

Q     Okay.  And tell them that prisoner made a threat and you need to transfer one?

A     *If he threatens another inmate I will call [my supervisor] and he will recommend the next step that I take.*

(Emphasis added.)  But, Lieutenant Brewer testified that he had no reason to call his supervisor or request that Walls be transferred, because he was not aware of Walls' threat against Newton and did not feel that Walls was a threat.

- 7 -

Steve Puckett, Superintendent of the Mississippi State Penitentiary on the day of the incident, testified as follows regarding the Department of Corrections policy on inmate threats:

> Q    What was the policy or procedure as it pertained to the transfer of inmates who have made threats of violence against other inmates or against a guard?
>
> A    ... if an inmate was threatened and he reported it, they would be separated.  The inmate being threatened could possibly be placed on protective custody through classification, or he could have red tagged the inmate who threatened him where they would not be housed in the same housing unit.
>
> Q    So am I correct in stating that when an inmate makes a threat against another inmate and an officer is advised of that, that officer *should* take immediate action?
>
> A    Yes, sir.
>
> Q    To transfer the inmate making the threat?
>
> A    Yes, sir.  The officer *should* notify a supervisor what is going on and steps *should* be taken to separate the inmates; yes, sir.
>
> Q    An officer who failed to take immediate action to separate an inmate who has made a threat against another inmate would be derelict in his duty, correct?
>
> A    Yes, sir, yes, sir.
>
> Q    And the policy or procedure is made up and instigated by the [Mississippi Department of Corrections] for the safety of the prisoners, as well as the officers, correct?
>
> A    Yes, sir.
>
> ....
>
> Q    And an officer who is aware that an inmate has threatened another prisoner and allows him near that prisoner would also be derelict in his duty, correct?
> A    Yes, sir, I would say so.

- 8 -

(Emphasis added.)

Following the hearing, the magistrate judge concluded that Newton's § 1983 claims for deliberate indifference and failure to provide adequate medical care were without merit. He concluded, however, that Captain Ross and Lieutenant Brewer had acted negligently in failing to protect Newton from Walls' threats, and recommended a $10,000 judgment against them on that state law claim.

The district court adopted the dismissal-recommendation respecting the § 1983 claims. On the other hand, for the negligence claim, the court held (1) that Captain Ross was entitled to qualified immunity under Mississippi law because there was no evidence that he knew of the threat; but (2) that, because Lieutenant Brewer had a mandatory obligation to inform his supervisor of Walls' threat, which the court held to be a ministerial function, and failed to do so, qualified immunity did not shield him from liability. Accordingly, a $10,000 judgment was awarded Newton on his negligence claim against Lieutenant Brewer; the other claims were dismissed.

## II.

Lieutenant Brewer challenges the denial of qualified immunity; Newton, the dismissal of his § 1983 failure-to-protect claim and the adequacy of the negligence claim damages. (Newton does not raise the inadequate medical care claim.) It goes without saying that we review the district court's factual findings for clear error and its legal conclusions, including on state law issues, *de*

- 9 -

*novo*.  FED. R. CIV. P. 52(a); **Salve Regina College v. Russell**, 499 U.S. 225, 238 (1991); *e.g.*, **Johnson v. Gambrinus Co./Spoetzl Brewery**, 116 F.3d 1052, 1056 (5th Cir. 1997).

A.

In claiming an erroneous application of Mississippi qualified-immunity law, Lieutenant Brewer asserts that the evidence did not show that he had a *duty positively imposed by law* (a ministerial duty) to report a threat of violence by an inmate; and that, because he was instead performing a discretionary function, he is entitled to such immunity.

Under Mississippi law, its officials sued for damages in a civil action enjoy qualified immunity from tort liability when performing discretionary official functions.  *E.g.,* **Evans v. Trader**, 614 So. 2d 955, 957 (Miss. 1993); *see also* **Webb v. Jackson**, 583 So. 2d 946, 949-50 (Miss. 1991).  However,

> a governmental official has no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that *duty is ministerial* in nature, *or* (2) that *duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority* and in the course thereof causes harm, *or* (3) the governmental actor commits an *intentional tort*.  Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.

**Grantham v. Mississippi Department of Corrections**, 522 So. 2d 219, 225 (Miss. 1988) (emphasis on "or" in original; remaining emphasis added).

- 10 -

The Mississippi Supreme Court has stated that "[t]he most important criterion" in determining whether an act is ministerial is whether "the duty is one which has been *positively imposed by law* and its performance required at a time and in a manner or upon conditions which are specifically designated, *the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion*." **Poyner v. Gilmore**, 158 So. 922, 923 (Miss. 1935) (internal quotation marks omitted) (emphasis added); *see also* **Mohundro v. Alcorn County**, 675 So. 2d 848, 853 (Miss. 1996); **Sorey v. Kellett**, 849 F.2d 960, 963 (5th Cir. 1988).

Along this line, a discretionary duty or function involves "personal deliberation, decision and judgment". **Davis v. Little**, 362 So. 2d 642, 643 (Miss. 1978) (internal quotation marks and citation omitted); *see also* **State for Use & Benefit of Brazeale v. Lewis**, 498 So. 2d 321, 322 (Miss. 1986) (emphasis added) (qualified immunity for the discretionary acts of public officials has evolved "[i]n order to allow [them] to participate freely and without fear of retroactive liability in *risk-taking situations requiring the exercise of sound judgment*"); **Poyner v. Gilmore**, 158 So. at 923 (duty is discretionary if it requires the official to use personal judgment and discretion in the performance of that duty); **Glover v. Donnell**, 878 F. Supp. 898, 901 (S.D. Miss. 1995) (emphasis added) ("it is precisely this type of official act, one in which the *official's judgment is implicated*, which the qualified immunity for discretionary acts is meant to protect").

- 11 -

In sum, and as outlined above, because Newton's negligence claim is not for an intentional tort, Lieutenant Brewer is entitled to qualified immunity (1) unless his duty to report Walls' threat was a ministerial duty; *or* (2) if the duty was instead discretionary, he substantially exceeded his authority. *See* **Webb**, 583 So. 2d at 950.

1.

The district court found that Newton had reported to Lieutenant Brewer that Walls had threatened Newton with violence; and concluded that, as a result, the Lieutenant had a "mandatory, nondiscretionary obligation to inform his supervisor of Walls' threatened attack". Lieutenant Brewer does not challenge the finding that Newton reported Walls' threat to him (Lieutenant Brewer). Instead, he contends that the testimony regarding Department of Corrections policy, in the absence of any evidence of a written policy or statutory authority, is insufficient to establish a duty "positively imposed by law". He contends further that, even assuming that the law positively imposed a duty, that *duty was triggered only by serious threats*, with his having discretion to decide which threats were serious enough to warrant further action.

Neither the district court nor Newton cited any Mississippi authority for the proposition that a mandatory duty "positively imposed by law" can be established in the absence of any evidence of a written policy or statutory or other authority. *See* **State for Use of Russell v. McRae**, 152 So. 826, 827 (Miss. 1934) (court

relied upon statutes to conclude that, although determining necessity for repairs was discretionary, supervisor's acts of tearing down and rebuilding bridge were done in capacity of a statutory road commissioner engaged in performance of ministerial duty); *Poyner v. Gilmore*, 158 So. at 923 (court relied upon statute in finding that chancery clerk had mandatory duty to attach certificate to claim presented for probate); *Sykes v. Grantham*, 567 So. 2d 200, 211 (Miss. 1990) (to determine whether parole board members lost their qualified immunity by failing to perform ministerial duties, court examined whether they complied with statute setting forth their functions); *McQueen v. Williams*, 587 So. 2d 918, 922 (Miss. 1991) (noting that plaintiff "cited no guideline or procedure—statutory or otherwise—to show that the Sheriff's decision-making in the performance of his duties involves no discretion"); *Coplin v. Francis*, 631 So. 2d 752, 755 (Miss. 1994) (construction of county road bridges in accordance with specifications mandated by statute for width and guard rails is ministerial function); *T.M. v. Noblitt*, 650 So. 2d 1340, 1343-45 (Miss. 1995) (court relied upon statute in determining whether public elementary school principal had a ministerial duty to report child abuse); *Mohundro*, 675 So. 2d at 854 (because the minimum standards for construction of culverts had been satisfied, there was no breach of a ministerial duty).

The only cases found in which ministerial functions were not required by statute are distinguishable, because the performance of those functions required no exercise of decision-making in the

course of carrying out official duties.  *See **Davis v. Little***, 362 So. 2d at 644 (act of driving a county vehicle on county business does not involve discretionary decision-making process); ***Barrett v. Miller***, 599 So. 2d 559, 567 (Miss. 1992) (although determining probable cause for issuance of a warrant is a discretionary function, execution of search warrant is a ministerial function); ***Stokes v. Kemper County Board of Supervisors***, 691 So. 2d 391, 394-95 (Miss. 1997) (driving a vehicle is a ministerial act).

No doubt, the testimony establishes that there is some form of Department of Corrections policy regarding inmate threats; but, the exact parameters of that policy, as well as the precise duties of a prison official who has knowledge of such a threat, are unclear. For example, the duties described by the testimony included starting an investigation, reporting the threat to a supervisor, separating the involved inmates, and transferring one of the inmates to another unit.  Moreover, it is far from "positively established" that the policy imposes such duties for any and all threats, regardless of how serious the official believes them to be.

Indeed, the testimony reflects otherwise.  As quoted *supra*, Lieutenant Brewer's supervisor, Captain Ross, testified that an officer would be derelict in his duty if he did not immediately start an investigation after becoming aware of a "*serious threat*". (Emphasis added.)  And, Lieutenant Brewer testified that, inmates often say things on the spur of the moment, but without really meaning anything, and that is why he talked to Walls; that, after

he talked to Walls, he did not perceive a threat to anyone; and that he took no action, because he had no reason to feel that Walls was going to attack Newton that day.  There was no evidence of any guidelines for assessment of the nature and seriousness of inmate threats.

The Mississippi State Penitentiary is a dangerous place.  As noted by the Superintendent in his testimony, the facility at Parchman is the maximum security facility for the Mississippi Department of Corrections, with approximately 80 percent of its approximate 6,000 inmates being "violent offenders".  Accordingly, inmate threats there must be taken quite seriously.  But, concomitantly, threats are part of the penitentiary's daily fare.  And such threats come in all forms and multiple variations and situations.  If certain, specific action must be taken by prison officials as to every one of those threats, then, surely, it would seem that the policy would be clearly and precisely stated in writing.  As noted, there is no evidence that it was at the time of the incident.

In the light of this testimony, and especially in the light of there being no evidence of a written policy or of case law, statutory or other authority, the district court erred in concluding that the policy imposed a ministerial duty on Lieutenant Brewer to report Walls' threat to Lieutenant Brewer's supervisor, regardless of whether Lieutenant Brewer thought the threat was serious enough to justify such action.  Restated, a duty to report every threat was not "positively imposed by law".

In this regard, in that the law did not positively impose a duty to report every threat, an officer's determination of whether a threat was serious enough to warrant further, as well as different types of, action involves the exercise of judgment and is, therefore, discretionary. *See Davis v. Little*, 362 So. 2d at 643 (internal quotation marks and citation omitted) (acts that require "personal deliberation, decision and judgment" are discretionary); *T.M.*, 650 So. 2d at 1343 ("A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof"); *id.* at 1345 (determination of whether there is "reasonable cause" to report suspected incident of child abuse is discretionary; but once determination is made that reasonable cause exists, official has no discretion not to report it).

As it turns out, Lieutenant Brewer was mistaken in his assessment of the seriousness of the threat; but, obviously, that does not deprive him of qualified immunity for the exercise of his discretion in making that assessment. *See id.* at 1343 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) ("There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors."), *cert. denied*, 339 U.S. 949 (1950)).

2.

Therefore, concerning this discretionary duty, into play comes the above-described second possible basis for no qualified

immunity: greatly exceeding authority. In that regard, Newton does not contend, nor is there any evidence, that Lieutenant Brewer "greatly or substantially exceed[ed]" this discretionary decision-making authority in determining (albeit mistakenly) that Walls' threat was not serious enough to warrant reporting it to his supervisor. *Grantham*, 522 So. 2d at 225. Accordingly, Lieutenant Brewer is entitled to qualified immunity.

B.

On cross-appeal, Newton presents two issues. Simply put, our conclusion that Lieutenant Brewer is entitled to state-law qualified immunity puts to rest Newton's claim regarding the adequacy of awarded damages as to the Lieutenant.

Remaining is only Newton's constitutional failure-to-protect claim. In that regard, he asserts that the defendants violated his Eighth Amendment rights by failing to protect him from the threatened attack by Walls.

Newton must show that he was "incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection". *See* ***Neals v. Norwood***, 59 F.3d 530, 533 (5th Cir. 1995). "In order to act *with deliberate indifference*, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting ***Farmer v. Brennan***, 511 U.S. 825, 837 (1994)) (emphasis added). *Whether a prison official had the requisite knowledge of a substantial risk is a question of fact*. *Id.*

Along this line, the district court found that Lieutenant Brewer did *not* suspect that the risk of harm to Newton was substantial.  In that regard, it noted the Lieutenant's testimony that Walls "calmed down after [the Lieutenant and Walls] discussed the ramifications of [Walls] causing problems in [the] Unit".  The court also found that Lieutenant Brewer had "responded to Walls' anger and did not believe that Newton was in danger."  Newton falls far short of demonstrating that those findings were clearly erroneous.

### III.

For the foregoing reasons, that portion of the judgment dismissing Newton's § 1983 claims and his state law negligence claim as to all defendants but Lieutenant Brewer is **AFFIRMED**; and that portion of the judgment granting relief against Lieutenant Brewer on that negligence claim is **REVERSED**, with judgment **RENDERED** in favor of Lieutenant Brewer.

*AFFIRMED IN PART; REVERSED and RENDERED IN PART*