**Revised November 13, 1998**

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-30587
(Summary Calendar)

_____

ERIC SMITH,

Plaintiff-Appellee,

versus

STEVE BRENOETTSY, Lieutenant, ET AL

Defendants

JOHN P WHITLEY, Warden

Defendant-Appellant.

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

November 5, 1998

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Eric Smith, an inmate at Louisiana State Penitentiary at Angola ("LSPA"), brought suit pursuant to 42 U.S.C. § 1983 and

state tort law against LSPA guard Steve Brengettsy,[1] LSPA Warden John Whitley and others after Brengettsy allegedly stabbed Smith. The magistrate judge denied summary judgment on Smith's failure-to-supervise claim against Whitley. Whitley now brings an interlocutory appeal from this denial of summary judgment, arguing that he is entitled to qualified immunity. We dismiss for lack of jurisdiction.

I

Brengettsy allegedly stabbed Smith in the stomach on January 10, 1993.[2] Prior to the stabbing, Brengettsy also allegedly verbally abused and threatened Smith for approximately two weeks. In response to the verbal abuse and threats, Smith attempted to seek the help of another guard, Lt. Stanley Griffin, and Brengettsy's shift supervisor, Major Foster Andrews, but both refused to become involved. Smith also wrote several letters to Warden Whitley seeking assistance. Smith allegedly wrote his first letter to Whitley on December 6, 1992, but no letter written on

---

[1] Smith misspelled Brengettsy's name in his complaint as "Brenoettsy." This opinion will correctly spell his name as "Brengettsy."

[2] These facts are largely drawn from Whitley's "Statement of Undisputed Facts," attached to Whitley's motion for summary judgment filed in accordance with Local Rule 2.10 of the Middle District of Louisiana. Smith's failure to oppose Whitley's motion for summary judgment means that these facts are admitted for purposes of review of the denial of summary judgment, except to the extent that the "facts" in the "Statement of Undisputed Facts" are contradicted by "facts" in other materials attached to his motion for summary judgment. *See Gaspard v. Amerada Hess Corp.*, 13 F.3d 165, 166 n.1 (5th Cir. 1994).

that date appears in Smith's prison file, and Whitley denies ever receiving this letter. Smith sent, and Whitley admits to receiving, two other letters, dated December 23, 1992 (the "December 23 letter"), and December 31, 1992 (the "December 31 letter"). In the December 23 letter, Smith requested assistance from Whitley because he was "constantly being verbally abused by" Brengettsy. In the December 31 letter, Smith again requested Whitley's assistance in getting Brengettsy to "back off with his treats (sic), and verbal abuse to me." The December 31 letter also stated that "[m]y complaint was brought to his co-worker Lt. Griffin, after hearing what I had to say, Lt. Griffin, said to me it was between Lt. Brenocesty (sic) and me to work-out." Both letters concluded with a plea for Whitley to investigate Brengettsy. Smith also sent a fourth letter, dated January 6, 1993, but this letter did not arrive until January 12, 1993, after Brengettsy allegedly stabbed Smith. Whitley apparently took no action based upon these letters.

Smith thereafter brought suit pursuant to 42 U.S.C. § 1983 against Brengettsy, Griffin, Andrews, Whitley, and the State of Louisiana through the Department of Public Safety and Corrections, alleging violations of his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution and pendent state law claims. With regard to Whitley, Smith claimed that Whitley's failure to investigate and to supervise Brengettsy enabled Brengettsy to stab him ("failure-to-supervise claim"). The district court referred the case to a magistrate judge, and based upon the magistrate's

recommendation, the court dismissed all claims and defendants except the failure-to-supervise claim against Whitley and the Eighth Amendment and state tort law claims against Brengettsy. Whitley then filed a motion for summary judgment, asserting qualified immunity,[3] which Smith failed to answer. The magistrate denied summary judgment because she found that the evidence Whitley attached to his summary judgment motion was not properly authenticated and because Whitley had failed to aver that he was not aware of Smith's complaints. Whitley timely appealed the magistrate's denial of summary judgment.

## II

We review the denial of a summary judgment motion *de novo*, viewing the evidence in the light most favorable to the nonmovant. *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 470 & n.1 (5th Cir. 1996). Summary judgment is appropriate where "there is no genuine issue of material fact and [] the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). To win summary judgment, the movant must show that the evidence in the record would not permit the nonmovant to carry its burden of proof at trial. *See Celotex v. Catrett*, 477 U.S. 317, 327, 106 S. Ct.

---

[3]     Brengettsy filed a summary judgment motion on the state tort law claims on grounds that Smith had failed to exhaust his state administrative remedies, but did not file a motion for summary judgment on the Eighth Amendment claim. The magistrate granted Brengettsy summary judgment on the state tort law claims. As Brengettsy has not brought an interlocutory appeal, we will not discuss the remaining Eighth Amendment claim against him.

2548, 2554, 91 L.Ed.2d 265 (1986). When the movant meets this burden, the nonmovant seeking denial of the motion must set forth specific facts showing a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248, 106 S. Ct. at 2510. "Material facts" are those "that might affect the outcome of the suit under the governing law." *Id*.

III

Before looking at the merits of this interlocutory appeal, we first examine the basis for our jurisdiction. *See Behrens v. Pelletier*, 516 U.S. )), 116 S. Ct. 834, 842, 133 L.Ed.2d 773 (1996) (holding that where there are issues of law separable from the merits of a claim, a court of appeals has jurisdiction to review those issues of law on interlocutory appeal, even when the district court denied summary judgment on the basis that material disputes of fact remain); *Johnson v. Jones*, 515 U.S. 304, 313, 115 S. Ct. 2151, 2156, 132 L.Ed.2d 238 (1995) (holding that when the only issue presented on interlocutory appeal is whether the evidence could support a finding that an official's conduct violated clearly established law, a court of appeals lacks jurisdiction to review the denial of summary judgment). The magistrate denied Whitley's motion for summary judgment based on qualified immunity because she

-5-

found that the evidence Whitley attached to his summary judgment motion was not properly authenticated and because Whitley had failed to introduce an affidavit averring that he was not aware of Smith's complaints.  Assuming, *arguendo*, that these evidentiary problems can be overlooked, we have jurisdiction to consider Whitley's contention that issues of law separable from the merits exist.  *See Behrens*, 516 U.S. at )), 116 S. Ct. at 842; *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996).

IV

In the underlying suit in this case, Smith claims that Whitley's failure to supervise Brengettsy enabled Brengettsy to stab him.[4]  A supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate "when [the supervisory official] breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976).  To hold a supervisory official so liable, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train

---

[4]  It was clearly established prior to the stabbing that "the treatment a prisoner receives in prison . . . [is] subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31, 113 S. Ct. 2475, 2480, 125 L.Ed.2d 22 (1993).  Not surprisingly, Whitley does not contend that the prohibition against Brengettsy's alleged actions was not clearly established.

or supervise amounts to deliberate indifference. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

Whitley raises three legal arguments that are separable from the merits of this case. Whitley first argues that Smith's letters were not specific enough to apprise him that Brengettsy posed a "substantial risk of serious harm" to Smith. Whitley further argues that under *Farmer*, his failure to investigate Smith's letters was an objectively reasonable response to Smith's letters as a matter of law because over six thousand complaints are filed annually at LSPA. Finally, Whitley argues that because Smith bears the burden of proof on summary judgment of showing that Whitley actually drew the inference that Brengettsy posed a "substantial risk of serious harm" to Smith, *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979, he is entitled to summary judgment as a matter of law.

Whitley first argues that he is entitled to summary judgment because Smith's letters did not sufficiently apprise him that Brengettsy might stab Smith. Whitley contends that a complaint letter "must contain an unusually high degree of specificity and

-7-

corroboration" in order to serve as the basis for a failure-to-supervise claim because over 6,000 complaints are filed at LSPA each year and that he cannot be expected to look into each and every complaint. As an initial matter, Whitley provides no legal support for this argument. Moreover, while a prisoner normally must complain about a specific threat to a supervisory official in order to give actual notice to that official, *see, e.g., McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991), *overruled on other grounds by Farmer*, 511 U.S. 825, 114 S. Ct. 1970, we have never required that a supervisory official be warned of the precise act that the subordinate official subsequently commits. *See, e.g., Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 659 (5th Cir. 1997). Rather, all that we (and the Supreme Court) have required is that "the official . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Id*. (citing *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979). On interlocutory appeal, however, we lack jurisdiction to resolve the factual question of whether Smith's letters were specific enough to satisfy this standard. *See Johnson,* 515 U.S. at 313, 115 S. Ct. at 2156.

Whitley next argues that his failure to investigate Smith's letters was an objectively reasonable response because over six thousand complaint letters are filed annually at LSPA. In *Farmer*, the Supreme Court stated that "prison officials who actually knew

of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844, 114 S. Ct. at 1982-83. Whitley presents no authority to support his argument that the number of prisoner complaints itself makes a failure to investigate an objectively reasonable response to a specific complaint and indeed, the number of prisoner complaints would appear to cut both ways in determining the reasonableness of a prison official's response. Moreover, based on *Farmer*, Whitley can escape failure-to-supervise liability by showing that he made a reasonable response to Smith's complaint; however, the reasonableness of a response in these circumstances is a question for the trier of fact that we cannot address on interlocutory appeal. *Id*.

Whitley also argues that he should be granted summary judgment because he claims that Smith has failed to prove that he "had in fact received [the letters] and was aware of them." This argument is apparently based on language from *Farmer* that in order to establish deliberate indifference, the supervisory official "must also draw the inference" that a prisoner faces a substantial risk of serious harm. 511 U.S. at 837, 114 S. Ct. at 1979. In *Farmer*, the Supreme Court explained how a plaintiff can show that a supervisory official actually drew this inference:

> [w]hether a prison official had the requisite knowledge
> of a substantial risk is a question of fact subject to

> demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id.* at 842, 114 S. Ct. at 1981 (internal citations omitted). Therefore, Smith can satisfy his burden of showing on summary judgment that Whitley actually drew the inference that Brengettsy posed a "substantial risk of serious harm" to Smith by pointing to facts in the record suggesting that Whitley had the requisite knowledge of a substantial risk. *Id.* Whether a supervisory official actually drew this inference then becomes a factual question that a court of appeals lacks jurisdiction to hear on interlocutory appeal. *See Johnson,* 515 U.S. at 313, 115 S. Ct. at 2156; *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998) ("*Whether a prison official had the requisite knowledge of a substantial risk is a question of fact.*"). Because of the disputed facts in this case, we lack jurisdiction on interlocutory appeal to decide whether Whitley actually drew this inference. *Id.*

Whitley also makes one other argument, an argument that is not separable from the merits of this case. He argues that he lacked a sufficient awareness of facts suggesting that Smith "faced a substantial risk of serious harm." According to Whitley, Smith wrote at least four letters to Whitley requesting protection from Brengettsy. Whitley attached two of these letters, the December 23 letter and the December 31 letter, as exhibits to his summary judgment motion. The December 23 letter asked for Whitley's

-10-

assistance because Smith allegedly was "constantly being verbally abused" by Brengettsy. The December 31 letter again requested Whitley's assistance in getting Brengettsy "to back off with his treats (sic), and verbal abuse." The December 31 letter also stated that "[m]y complaint was brought to his co-worker Lt. Griffin, after hearing what I had to say, Lt. Griffin, said to me it was between Lt. Brenocesty (sic) and me to work-out." Both letters concluded with a plea for Whitley to investigate Brengettsy. Whitley's argument in effect invites this court to reweigh the district court's determination that a genuine issue of material fact exists with regard to whether Whitley acted with deliberate indifference. We lack jurisdiction to hear this argument on interlocutory appeal. *See Johnson*, 515 U.S. at 313, 115 S. Ct. at 2156.

V

In conclusion, none of the separable legal issues identified by Whitley are sufficient for us to grant summary judgment in his favor. Therefore, because the district court determined that a genuine dispute of material fact exists with regard to whether Whitley acted with deliberate indifference, we dismiss Whitley's interlocutory appeal for lack of jurisdiction. *See Naylor v. State of La., Dep't of Corrections*, 123 F.3d 855, 857 (5th Cir. 1997); *Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995).

For the foregoing reasons, Whitley's interlocutory appeal is

DISMISSED for lack of jurisdiction.