WOOD COUNTY, Bill Skinner and Billy Blunt, Appellants,

v.

Sue RIVERS, Personal Representative of the Estate of Bobby Lynn Harris, Deceased, Danna Taylor, Personal Representative of the Estate of Letricia Kay Harris, Deceased, Sue Rivers and Danna Taylor as Co–Personal Representatives of the Estate of Carrie Gail Harris, Sue Rivers and Danna Taylor, as Co–Personal Representatives of the Estate of Candy Michele Harris, Della Ruth Harris and Edgar Lee Blankenship, Appellees.

No. 12–00–00070–CV.

Court of Appeals of Texas, Tyler.

Dec. 29, 2000.

P. Michael Jung, Dallas, Dallas, for appellants.

Prof. William D. Underwood, for appellees.

Panel consists of HADDEN, J., WORTHEN, J., and RAMEY, Retired Chief Justice, Twelfth Court of Appeals, sitting by assignment.

HADDEN, Justice.

This is an appeal of a trial court's interlocutory order denying a motion for summary judgment, in which Wood County, its Sheriff, Bill Skinner, and its Deputy Sheriff, Billy Blunt, asserted qualified immunity as an affirmative defense to the 42 U.S.C. § 1983 claim filed by Appellees.[1] In one issue, Appellants assert that the denial was error. For the reasons stated below, we dismiss the appeal as to Wood County, reverse the order of the trial court, and render judgment as to the claims against Bill Skinner and Billy Blunt.

## BACKGROUND

This suit arises out of a tragic automobile accident wherein Richard Royce Knight ("Knight"), failed to observe a highway stop sign and collided with a vehicle occupied by four members of the Harris family. All five persons were killed. A toxicology report showed that Knight's blood alcohol level was 0.17 at the time of the accident. Just prior to the accident, Appellant Billy Blunt ("Blunt"), a deputy Sheriff of Wood County, responded to a disturbance call at the home of Kathryn Croteau ("Croteau"). When he arrived, he found Knight outside the residence. During their conversation, Knight admitted to having drunk four beers. Appellees' summary judgment evidence shows that Blunt, when he told Knight to leave the premises, essentially instructed Knight to drive his

1. Appellees are Sue Rivers, Personal Representative of the Estate of Bobby Lynn Harris, Deceased, Danna Taylor, Personal Representative of the Estate of Letricia Kay Harris, Deceased, Sue Rivers and Danna Taylor, as Co–Personal Representatives of the Estate of Carrie Gail Harris, Sue Rivers and Danna Taylor, as Co–Personal Representatives of the Estate of Candy Michele Harris, Della Ruth Harris and Edgar Lee Blankenship.

vehicle while intoxicated. Blunt denies this and claims that he did not observe any signs that Knight was intoxicated, but for the purposes of summary judgment analysis all evidence favoring Appellees, the non-movant, will be taken as true. Croteau advised Blunt that she wanted Knight to leave, and that if he did not, she wanted to file trespassing charges against him. Blunt communicated this to Knight who then left the premises by driving away in his vehicle. Shortly thereafter, the accident occurred. Appellant Wood County Sheriff Bill Skinner ("Skinner") was not at Croteau's at the time of the incident. He was notified of the facts after the accident.

Appellees sued Wood County, Blunt, Skinner, and others alleging various causes of action including a violation of 42 U.S.C. § 1983 claiming that Wood County, Blunt, and Skinner deprived the Harris accident victims of life without due process of law under the Fourteenth Amendment to the Constitution of the United States. Specifically, they assert that Blunt is liable for allowing or instructing Knight to operate a vehicle while intoxicated, and in the case of Skinner for negligently training and supervising Blunt. Appellees further claim that Wood County is liable for any wrongful acts or omissions of Skinner in his capacity as a sheriff. Appellants filed their motion for summary judgment based on several grounds including a claim of qualified immunity. Eventually, Appellees dismissed all defendants except Wood County, Blunt and Skinner and dismissed all state causes of actions leaving only their § 1983 claims. After preliminary rulings by the trial court, the summary judgment motion was heard and denied. This appeal followed.

### WOOD COUNTY

We will first address Wood County's appeal. Wood County appeals from an interlocutory order denying summary judgment pursuant to § 51.014(5) of the Texas Civil Practice and Remedies Code, which allows an interlocutory appeal from an order denying qualified immunity. Unlike local governments sued under the Tort Claims Act, a local government sued under § 1983 has no immunity even if its employee is entitled to qualified immunity. See *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993); *Bexar Cty. v. Giroux-Daniel,* 956 S.W.2d 692, 695 (Tex.App.—San Antonio 1997, no pet.). Accordingly, we have no jurisdiction over Wood County's appeal because it cannot be based on Blunt or Skinner's assertion of qualified immunity. See *City of Harlingen v. Vega,* 951 S.W.2d 25, 27–28 (Tex.App.—Corpus Christi 1997, no pet.). Wood County's appeal is dismissed.

### THE STANDARD OF REVIEW

The standard of review on appeal of a summary judgment is whether the movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Carrera v. Yepez,* 6 S.W.3d 654, 660 (Tex.App.—El Paso 1999, pet. dism'd w.o.j.). In the case of a qualified immunity defense to a § 1983 claim, once the defendant official pleads good faith and demonstrates that his actions occurred in the context of his discretionary authority, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Salas v. Carpenter,* 980 F.2d 299, 306 (5th Cir.1992); *Carrera,* 6 S.W.3d at 661. In the instant case Blunt and Skinner have pleaded good faith and it is uncontested that their actions occurred in the context of their discretion-

ary authority. Thus, we address the narrow issue of whether their actions violated clearly established law.

■ In determining the applicability of qualified immunity in a § 1983 claim, we engage in a two-step inquiry. First, we must determine whether deprivation of a viable constitutional right has in fact been alleged at all. If such a deprivation has been alleged, only then do we proceed to determine whether that viable constitutional right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999). This process facilitates the goal of qualified immunity which is to protect public officials both from undeserved liability and from the difficulties associated from protracted litigation. *Id.* Deciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct to the benefit of the officers and the general public. *Id.* Our analysis of the first step is dispositive of the case and thus, we do not reach the second step.

*ANALYSIS*

■ Section 1983 provides that every person who, under color of law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. 42 U.S.C.A. § 1983 (Supp. 1994–1999). The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property, without due process of law. Thus, Appellees claim that Blunt violated the Fourteenth Amendment by depriving the Harris family of life without due process of law and is therefore liable under § 1983. This claim invokes the substantive rather than the procedural component of the Due Process Clause, that is, that Blunt was categorically obligated to protect the Harrises under these circumstances.

■ Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The United States Supreme Court addressed this issue in *DeShaney v. Winnebago Co. DSS*, 489 U.S. 189, 195–96, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). In *DeShaney* the court was called upon to discern duty, if any, of a child protective services agency to protect a young boy from the murderous abuse of his own father once it had knowledge of the danger. There, the Supreme Court stated "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property ... but its language cannot fairly be extended to impose an affirmative obligation on the State to insure that those interests do not come to harm through other means." *Id.* The court pointed out that the Due Process Clause was intended to prevent government from abusing its power, or employing it as an instrument of oppression, *i.e.*, "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* Thus, it follows that if the Due Process Clause does not require the State to provide its citizens with particular protection, then the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general rule, then, a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

However, Appellees argue that the instant case in not a "failure to protect" case

where officers simply chose to remain on the sideline and allow private action to take its course, but that it is a "State created danger" case. They contend that when government officials affirmatively exercise their authority to order a private party's dangerous actions and thereby cause an injury, those government officials should be held responsible for their own conduct and cannot logically attribute the deprivation to purely private activity. In other words, Appellees' theory is that the Constitution was violated when Blunt directly caused the loss of life by commanding the private party to drive while intoxicated.

In support of their position, Appellees cite *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) and *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 546–47, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987). *Blum* arose out of a claim concerning private nursing home patients who alleged that they had not received certain procedural safeguards in conjunction with decisions by the home's utilization review committee to transfer them to a lower level of care, which in turn led to the reduction in their Medicaid benefits. *Blum*, 457 U.S. at 994–96, 102 S.Ct. 2777. There the Supreme Court concluded that there was insufficient indicia of State action to implicate the Fourteenth Amendment simply because the State acted in accordance with private decisions in adjusting Medicaid benefits. *Blum*, 457 U.S. at 1005, 102 S.Ct. 2777. In *San Francisco Arts & Athletics, Inc.*, the Court considered whether the United States Olympic Committee was a governmental actor for the purposes of evaluating a Fifth Amendment discrimination claim. There the Court found that the Committee's decision to enforce its exclusive right to use the term "Olympic" thereby denying San Francisco Arts & Athletics the opportunity to sponsor an event entitled the "Gay Olympic Games," simply was not a governmental decision. *San Francisco Arts & Athletics, Inc.*, 483 U.S. at 547, 107 S.Ct. 2971.

Although *Blum* and *San Francisco Arts & Athletics, Inc.*, include recitations of general principles concerning governmental liability for private decisions made under the influence of governmental coercion, neither case includes a holding to that effect. Furthermore the court did not use either opportunity to further explain the general principles recited or provide examples of coercion sufficient to impute liability. Neither case was decided under the substantive due process component of the Fourteenth Amendment (the constitutional provision at issue here), and both are factually and legally inapposite to the issues in this case.

Appellees, like some federal circuit courts, refer to a statement in the United States Supreme Court's *DeShaney* opinion to create the doctrine of state created danger. In *DeShaney* the child protective services of Winnebago County had actually taken affirmative steps to protect Joshua DeShaney but nevertheless returned him to his father who eventually took Joshua's life. In the opinion the Supreme Court stated: "That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *DeShaney*, 489 U.S. at 201, 109 S.Ct. 998. This statement has led some circuits to find that State actors can be liable under § 1983 if they acted affirmatively in such a way as to increase the danger faced by particular individuals. *See, e.g., Kneipp v. Tedder*, 95 F.3d 1199

(3rd Cir.1996) (considering the liability of officers who detained an obviously inebriated couple, eventually sending the wife home alone, thereby separating her from her private source of rescue and exposing her to injury); *Wood v. Ostrander,* 879 F.2d 583, 590 (9th Cir.1989) (considering liability of an officer who arrested plaintiff's companion, leaving her alone, at night, in a high crime area where she was eventually raped).

The Fifth Circuit has questioned whether the United States Supreme Court intended that comment in *DeShaney* to carve out an area of State actor liability under § 1983. *See Johnson v. Dallas ISD,* 38 F.3d 198, 201 (5th Cir.1994); *Leffall v. Dallas ISD,* 28 F.3d 521, 530–31 (5th Cir.1994). Instead, the Fifth Circuit has interpreted the *DeShaney* language as nothing more than a contextual observation by the Supreme Court. *Leffall,* 28 F.3d at 530–31; *see also Randolph v. Cervantes,* 130 F.3d 727, 731 (5th Cir.1997) (declining to recognize the state created danger doctrine); *Doe v. Hillsboro Independent School District,* 113 F.3d 1412, 1415 (5th Cir.1997) (noting that the Fifth Circuit has never sustained liability on state created danger grounds). Since the *DeShaney* decision in 1989, the Supreme Court does not appear to have predicated State actor liability on a State created danger theory nor has that theory been adopted by the Fifth Circuit.

Moreover, in 1999, the Fifth Circuit handed down *Saenz v. Heldenfels Bros. Inc.,* 183 F.3d 389, 391 (5th Cir.1999), in which it has apparently established the known victim requirement in the application of the Due Process Clause. In *Saenz* it was alleged that two officers observed a driver whom they believed was driving while intoxicated. The junior officer sought to investigate the situation but was ordered by the senior partner to take no action in the matter. A few minutes later the suspect crashed into an oncoming vehicle and killed two of its occupants. Tests showed that the suspect, at the time of the accident, had a blood alcohol level of .21, well over the legal limit. In holding that the Plaintiffs failed to allege the deprivation of a constitutional right, the court reminded us that the "guarantee of due process is limited to situations where a State officer *deliberately chooses to deprive a person* of life, liberty, or property" (emphasis ours) and that the Due Process Clause of the Fourteenth Amendment cannot operate to impose liability where the State actor in question has *no subjective awareness of the victim. Saenz,* 183 F.3d at 391. The court observed that a contrary conclusion would "make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States," *citing Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

Furthermore the court in *Saenz* states that its holding is virtually compelled by the United States Supreme Court's decision in *DeShaney* and reasons that "[I]f a state officer has no duty to protect an identified person from a known danger presented by a third party, he cannot offend due process by permitting an intoxicated driver to remain on the highway, thereby increasing the risk of harm to unidentified and unidentifiable members of the public." *Saenz,* 183 F.3d at 392. The Third Circuit, which does impose liability based on the state created danger theory, concurs with the known victim requirement in *Saenz* and requires a relationship between the State and the injured person in determining whether state created danger liability is applicable. *See Kneipp,* 95 F.3d at 1209 n. 22 ("the relationship requirement under the state created danger theory contemplates some contact such

that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense").

In the instant case, neither Blunt nor Skinner was aware that the victims were on the highway and did not have any relationship established with them at the time. The tragedy here was caused by Knight. The known victim requirement is a logical result of the limited scope of the Due Process Clause. It is impossible to deliberately deprive a person of a constitutional right without being aware that the person exists. The Appellees have cited no Texas or Fifth Circuit cases which would authorize us to extend substantive due process to situations similar to the facts of this case. And because of the open-ended nature of substantive due process, the supreme court has cautioned courts to use restraint when asked to find new rights secured by the Due Process Clause. *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). We thus conclude that no claim for deprivation of constitutional rights has been alleged against Blunt.

### SHERIFF SKINNER

Skinner was the immediate supervisor of Blunt but had no personal involvement in the facts which are the basis for this suit. It is well settled that supervisory officials, such as Skinner, cannot be held vicariously liable for their subordinates' actions under § 1983 under a respondent superior theory. *Monell v. City of New York Dept. of Social Services*, 436 U.S. at 690–691, 98 S.Ct. at 2035–36. However, Appellees allege that Skinner is liable under § 1983 for inadequate training and supervision of Blunt. According to the Fifth Circuit, a supervisory official may be held liable under § 1983 for the wrongful acts of a subordinate when the official breached a duty imposed by state or local law and this breach *caused a constitutional injury. Smith v.Brenoett-*

*sy,* 158 F.3d 908, 911–12 (5th Cir.1998). In order to find supervisory liability, the plaintiff must show the following:

(1) the supervisor failed to supervise or train the subordinate official;

(2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and

(3) the failure to train or to supervise amounts to deliberate indifference.

*Smith v. Brenoettsy,* 158 F.3d at 911–12. Based on our previous analysis regarding Blunt, Skinner cannot be held liable for actions of a subordinate that do not involve deprivation of a constitutional right. Since Blunt's actions did not violate the Harrises' substantive due process rights, it follows that Appellees have not met the causal link requirement in element (2) above. Thus, it is unnecessary for us to address elements (1) and (3).

### CONCLUSION

For these reasons, we hold that Appellees have failed to allege the deprivation of a right secured by the constitution, and therefore, their § 1983 claim fails. Because of our holding, we do not reach the second inquiry of whether the constitutional right was clearly established when the conduct at issue occurred. Moreover, we do not reach the issue of whether the individual Appellants have met their burden of establishing that they are entitled to a qualified immunity defense. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, the order of the trial court is reversed and judgment is rendered that Appellees take nothing against Appellants, Blunt and Skinner. As noted above, the appeal is dismissed as to Appellant Wood County.